No. 04-635

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 189

TRAVIS HAUSCHULZ,

        Plaintiff and Appellant,

   v.

MICHAEL LAW FIRM,

        Defendant and Respondent.

APPEAL FROM:    The District Court of the Thirteenth Judicial District,
                In and For the County of Yellowstone, Cause No. DV 00-659,
                Honorable G. Todd Baugh, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            Travis Hauschulz, Pro Se, Hutchinson, Kansas

        For Respondent:

            Mark T. Errebo, Attorney at Law, Billings, Montana

Submitted on Briefs:  March 16, 2005

Decided:  August 2, 2005

Filed:

_____
                            Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Travis Hauschulz (Hauschulz) appeals from the judgment entered by the Thirteenth Judicial District Court, Yellowstone County, on January 28, 2003, granting Michael Law Firm's (Michael) Motion to Dismiss the Complaint. We affirm the order of the District Court.

¶2 We address the following issue:

¶3 Did the District Court abuse its discretion in granting the motion to dismiss the complaint for failure to prosecute?

## FACTUAL AND PROCEDURAL BACKGROUND

¶4 On August 13, 1998, Hauschulz was charged with criminal mischief, resisting arrest, and partner or family member assault in Billings, Montana. While awaiting trial, Hauschulz was extradited to Idaho on unrelated charges and incarcerated there. In Hauschulz's absence, his grandfather retained Michael to represent Hauschulz in the Billings criminal proceedings, which Hauschulz would be unable to attend due to his incarceration.

¶5 Hauschulz alleges that Michael appeared for trial, professed not to know where his client was and negotiated a plea agreement on behalf of Hauschulz, which Hauschulz never authorized. Hauschulz filed a *pro se* civil action against Michael alleging due process, equal protection and other constitutional violations, and requested dismissal of the criminal charges, monetary damages and other financial payments.

¶6 On September 13, 2000, the District Court dismissed Hauschulz's complaint for failure to state a claim upon which relief could be granted. Hauschulz appealed to this Court,

and, on August 14, 2001, in *Hauschulz v. Michael Law Firm*, 2001 MT 160, 306 Mont. 102, 30 P.3d 357, we reversed and remanded for further proceedings, stating:

> Because of the unique circumstances of this case, we urge the District Court to give Hauschulz time to properly replead his case, and either find an attorney to represent him in this action, or indicate to the court when he will be able to prosecute the complaint *pro se.*

*Hauschulz*, ¶ 15. Referencing this language, the District Court, on October 10, 2001, entered an order granting Hauschulz twenty days to replead and find an attorney or indicate when he would be able to prosecute the matter pro se, serving Hauschulz by mail. However, this order was returned to the court, due to his transfer from Idaho to a Kansas correctional facility and his failure to notify the court of his change in address. On April 18, 2002, the District Court, after learning of Hauschulz's new address, entered another order again reciting this Court's remand instructions and granting Hauschulz another thirty days to replead his case and either find an attorney or indicate to the court when he would be able to prosecute the matter pro se.

¶7 On May 2, 2002, Hauschulz filed a pro se amended complaint, claiming legal malpractice by Michael, but did not advise the court, in accordance with the order, when he would be able to try the case. He also filed a motion for appointment of counsel on the grounds that he did not have access to Montana law or have training in Montana law. In support of his motion for counsel, Hauschulz filed an affidavit indicating he did not have assets. Pursuant thereto, the District Court ordered that Hauschulz's fees be waived, but

3

denied his motion for counsel. On June 17, 2002, Michael, by counsel, answered the amended complaint, denying the allegations.

¶8    On June 21, 2002, the District Court entered and served by mail an order setting a scheduling conference for July 10, 2002. The order acknowledged that Hauschulz resided out of town and authorized Hauschulz to appear by telephone. On July 2, 2002, Hauschulz filed a motion for stay of proceeding, citing his continued incarceration, but failing to specify the length of stay requested. Hauschulz indicated that he "should know within the next 60 to 90 days of a release date," and, at that time, he would advise the court when he would be available to prosecute his claim. On July 10, 2002, the District Court conducted the scheduling conference as ordered. Michael's counsel appeared, but Hauschulz did not call or otherwise participate. The District Court set trial for January 7, 2003. In a later order, the District Court explained that Hauschulz's motion for stay was denied, noting that "Plaintiff did not attend the scheduling conference, or call or write to give the Court any input as to setting trial."

¶9    On October 29, 2002, Hauschulz wrote a letter to the presiding district court judge, Honorable Todd Baugh, asking that the trial date be extended. Hauschulz did not indicate the length of the extension sought, but stated he would be unable to work with the courts for at least another two months, and possibly longer, given the upcoming holidays. Judge Baugh had the letter filed with the Clerk of Court and deemed a motion for continuance. Michael opposed the motion, arguing that the case had been pending for over two years and

4

Hauschulz had not yet been able to appear in court. On November 13, 2002, the District Court denied Hauschulz's motion, reasoning:

> As near as this Court can determine, plaintiff wants this Court to wait until plaintiff is out of jail before holding this trial, but it looks like even plaintiff does not know when he will be out of jail. It is a fact that being in jail does hamper one in the exercise of many civil liberties one could otherwise exercise. However, being in jail is a function of one's criminal acts and does not give one a right to have one's civil trial claims extended indefinitely over the objection of another party to the civil action.

¶10 In early November 2002, Hauschulz sent the court a photocopy of a document entitled motion to stay proceedings. On December 5, 2002, the District Court denied this motion, stating:

> Plaintiff still does not tell the Court how long a stay or continuance he wants and at this point, unless defendant should acquiesce, the Court's discretion to continue, stay, or postpone trial is not moved. The final pretrial conference is December 20, 2002, at 8:15 a.m. and plaintiff should be here with a proposed pretrial order. Trial is scheduled for January 7, 2003, and plaintiff should be here prepared for trial on that day. [Emphasis omitted.]

¶11 On December 13, 2002, Hauschulz filed a motion to reconsider the denial of the stay of proceedings, indicating he was not requesting that the case be continued until he was released from prison, as the District Court's order had indicated, but, rather, he was negotiating for representation by counsel and needed time to complete the negotiations. He also filed a motion for a telephonic hearing on his motion for reconsideration of stay. The District Court granted the telephonic hearing motion and ordered the motion to reconsider be heard on December 20, 2002, in conjunction with the final pre-trial conference, with Hauschulz appearing by telephone. Hauschulz appeared by telephone, indicating that he

5

could not attend the trial because of his incarceration and conceding that he needed a continuance of the case until his release, which he estimated would be in the year 2005. Objection to the motion was entered by Michael's counsel. The District Court denied the continuance.

¶12 One day before trial, on January 6, 2003, Hauschulz filed a motion for change of venue, requesting that the court "transfer this case to the jurisdiction of the Montana Federal Courts." Hauschulz did not appear personally or by counsel for trial on January 7, 2003, and Michael moved for dismissal for failure to prosecute. The District Court entered Hauschulz's default for failing to appear, and, on January 28, 2003, the District Court filed an order dismissing the action with prejudice and entering judgment for Michael, reasoning that "plaintiff has failed to prosecute the case, and a continuance for the length of time requested by plaintiff would be contrary to defendant's right to a just and speedy determination of this action and the interests of justice." Hauschulz submitted a notice of appeal that was formally filed on May 6, 2003.

¶13 On April 15, 2004, this Court dismissed Hauschulz's appeal, docketed as Cause No. 03-397, for lack of jurisdiction because Hauschulz's notice of appeal had been untimely filed. Hauschulz requested rehearing and submitted a letter with attachments which indicated the notice of appeal may have been timely mailed and received, but not formally filed. Those documents were filed as a new matter, the present Cause No. 04-635. Thereafter, we entered an order allowing the appeal to go forward.

**STANDARD OF REVIEW**

6

¶14    The district court has "broad discretion" in ruling on a motion to dismiss for failure to prosecute, and its decision will be overturned only for an abuse of discretion. *Hobble-Diamond Cattle Co. v. Triangle Irr. Co.* (1995), 272 Mont. 37, 40, 899 P.2d 531, 533.

## DISCUSSION

¶15    ***Did the District Court abuse its discretion in granting the motion to dismiss the complaint for failure to prosecute?***

¶16    Michael makes the initial argument that because Hauschulz did not provide a transcript of the District Court proceedings, this Court cannot review the matter, and, pursuant to Rule 9, M.R.App.P., this matter must be dismissed. However, the rule requires only that an appellant present "a record sufficient" to enable this Court to rule on the issues raised. Here, the issue raised is the failure to prosecute the action, and we conclude that the District Court record in this matter is sufficient for review of that issue.

¶17    Rule 41(b), M.R.Civ.P., authorizes a district court, on motion by a defendant, to dismiss an action for failure of the plaintiff to prosecute or to comply with any court order. *See Vermeer of Washington, Inc. v. Jones*, 2004 MT 77, ¶ 14, 320 Mont. 435, ¶ 14, 87 P.3d 516, ¶ 14. Rule 41(b), M.R.Civ.P., provides:

> For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant. Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction or failure to join a party under Rule 19, operates as an adjudication upon the merits.

In *Shackleton v. Neil* (1983), 207 Mont. 96, 101, 672 P.2d 1112, 1115, this Court set forth a "rule of thumb" for reviewing decisions on motions to dismiss for failure to prosecute:

> "A rule of thumb as to the meaning of the abuse of discretion standard provides that the trial court's exercise of discretion should not be disturbed unless there is a 'definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors.'"

*Shackleton*, 207 Mont. at 101, 672 P.2d at 1115 (quoting *Nealey v. Transportacion Maritima Mexicana, S.A.* (9th Cir.1980), 662 F.2d 1275,1278).

¶18 Decisions on motions to dismiss for failure to prosecute require a careful balancing of the competing public policy interests of resolving lawsuits on the merits and encouraging prompt disposition of disputes. *Hobble-Diamond Cattle Co.*, 272 Mont. at 40, 899 P.2d at 533-34; *Westland v. Weinmeister* (1993), 259 Mont. 412, 415, 856 P.2d 1374, 1376. In *Westland*, 259 Mont. at 415, 856 P.2d at 1376, we stated that, in determining whether a district court has abused its discretion under Rule 41(b), M.R.Civ.P., four factors would be considered:

> "1) the plaintiff's diligence in prosecuting his claims; 2) the prejudice to the defense caused by the plaintiff's delay; 3) the availability of alternate sanctions; and 4) the existence of a warning to plaintiff that his case is in danger of dismissal."

*Westland*, 259 Mont. at 415, 856 P.2d at 1376 (quoting *Becky v. Norwest Bank Dillon, N.A.* (1990), 245 Mont. 1, 8, 798 P.2d 1011, 1015).

¶19 Hauschulz contends that the District Court erred in concluding that a continuance of the trial would be unjust and contrary to Michael's rights, and by dismissing the matter.

8

Hauschulz maintains he exercised due diligence in bringing his case to court, and the District Court, in abuse of its discretion, failed to consider other viable options, such as appointing counsel for him or allowing him to participate in the trial by telephone.

¶20 Michael contends Hauschulz's appeal should be denied because it is meritless. He argues the court allowed Hauschulz time to get a lawyer and Hauschulz did contact at least two, but submits the reason no lawyer took the case was because it lacked merit. Michael also maintains that Hauschulz received sufficient due process from the courts, but Hauschulz's incarceration has also cost him many rights, including the ability to be present to prosecute a lawsuit. He argues that allowing prisoners to indefinitely continue civil lawsuits would give them additional rights not given to the public.

¶21 The first *Westland* factor assesses the plaintiff's diligence. The District Court provided opportunities for Hauschulz to pursue his claim, and concluded that he had failed to do so. On October 10, 2001, and again on April 18, 2002, the District Court ordered the plaintiff to either find legal representation or to advise the court of a timetable in which he would be able to try the case himself, yet Hauschulz did not. On June 21, 2002, the District Court set a scheduling conference for July 10, 2002, and allowed Hauschulz to appear by telephone to discuss scheduling of the matter. However, Hauschulz neither appeared nor submitted written comments on the scheduling of the case.

¶22 Three months after the District Court had scheduled the matter for trial, on October 29, 2002, Hauschulz requested a continuance of the trial, but again did not inform the court of the length of continuance sought. Then in early November and again in December of

9

2002, within weeks of the trial, Hauschulz requested time to work out negotiations with a law firm in hopes of gaining representation. This effort came long after the District Court first advised Hauschulz to find counsel or inform the court of when he could represent himself pro se.

¶23 At the final pretrial conference on December 20, 2002, Hauschulz informed the court that he would not attend the trial scheduled for January 7, 2003, because he was incarcerated. He then asked for a continuance of the case until his release from prison, and could only offer that he estimated his release would be sometime in 2005, over two years later. Although Hauschulz's efforts were, no doubt, hampered by his incarceration, we cannot conclude that this matter was diligently prosecuted in the court.

¶24 Prejudice to the defendant is the second *Westland* factor. In granting the motion to dismiss, the District Court noted that allowing the action to continue "would be contrary to defendant's right to a just and speedy determination." Hauschulz's failure to appear at the trial deprived Michael of the opportunity to answer the complaint and exonerate himself for malpractice he allegedly committed in 1998, some five years earlier. Neither was there any assurance that the matter could be prosecuted within a reasonable time if Michael's motion to dismiss would be denied. Hauschulz could only offer that he wanted the matter stayed until his release from incarceration, which he estimated to be some two years later.

¶25 In *Hobble-Diamond Cattle Co.*, 272 Mont. at 42, 899 P.2d at 535, we noted that the availability of alternate sanctions, the third *Westland* factor, would not necessarily bar dismissal of an action for failure to prosecute:

10

> [N]othing in the balancing of factors mandated by *Westland* requires a total unavailability of other sanctions prior to dismissal for failure to prosecute under Rule 41(b), M.R.Civ.P. Indeed, such a requirement would render involuntary dismissal pursuant to Rule 41(b) an impossibility since, as a practical matter, alternative sanctions always would be available to a court.

*Hobble-Diamond Cattle Co.*, 272 Mont. at 42, 899 P.2d at 535. Although the District Court did not address the "availability of alternate sanctions" in its dismissal order, it appears from our review of the record that the District Court made every reasonable effort to encourage Hauschulz's participation, and there was nothing that could have been accomplished in sanctioning Hauschulz, who was, obviously, already having great difficulty in prosecuting his claim. Thus, imposition of a sanction was not a viable alternative.

¶26 Regarding the final *Westland* factor, the District Court gave no specific prior warning to Hauschulz that his case was in danger of dismissal. The court did advise Hauschulz that he must be prepared for trial, and that incarceration did not allow his case to be extended indefinitely. We note that, although a specific warning is relevant to the issue, "[n]either *Westland* nor any rule specifically requires a court to give such a warning. . . . While such a warning is the better practice, we are not inclined to impose such a burden regarding the diligent prosecution of a case on the courts." *Hobble-Diamond Cattle Co.*, 272 Mont. at 42, 899 P.2d at 535.

¶27 Following this Court's remand of the matter in August 2001, the District Court reasonably accommodated Hauschulz's circumstances and gave opportunity for Hauschulz to prosecute his case until dismissing it on January 28, 2003. The District Court was hindered in accommodating Hauschulz by his failure to adequately participate in the

11

proceeding. Hauschulz had a significant amount of time to obtain representation, or to specify when he would be able to prosecute the claim, but he failed to do so, offering only an estimate that he would be released in another two years. Undoubtedly, incarceration restricts one's ability to exercise civil liberties, but it does not give rise to a right to an indefinite postponement of civil proceedings, particularly over the objection of the other party.

¶28 A review of this record reveals that the District Court did not abuse its "broad discretion" in balancing the competing public policy interests at issue as required by *Westland*. We simply do not have "a definite and firm conviction that the court below committed a clear error of judgment" in dismissing the proceeding with prejudice under these circumstances. *Shackleton*, 207 Mont. at 101, 672 P.2d at 1115.

¶29 Affirmed.


/S/ JIM RICE


We Concur:

/S/ W. WILLIAM LEAPHART
/S/ BRIAN MORRIS
/S/ JOHN WARNER


Justice James C. Nelson concurs.

12

¶30 I concur in the legal analysis of our decision, but, frankly, the result is distressing. Hauschulz has been the victim of our justice system from the beginning--starting when his counsel negotiated an unauthorized plea agreement in a criminal case while Hauschulz was incarcerated out of state on another charge. *Hauschulz v. Michael Law Firm*, 2001 MT 160, ¶ 3, 306 Mont. 102, ¶ 3, 30 P.3d 357, ¶ 3 (*Hauschulz I*).

¶31 As our Opinion in *Hauschulz I* and our decision here demonstrate, Hauschulz, while all the time incarcerated, has attempted to file and prosecute a civil malpractice case against his former counsel. Not surprisingly, he has had virtually no success because, in his situation, he has not been able to hire someone to represent him and because of the institutional barriers that make filing and prosecuting a civil case from prison a virtual impossibility without counsel.

¶32 We, as a judiciary, rail about the issue of lack of access to justice; we gush over our grand intentions to improve the hopeless situation in which people without money and influence find themselves when they attempt to seek redress in our courts. Montana's constitutional guarantees of access to the courts (Article II, Section 16), due process (Article II, Section 17) and equal protection of the laws (Article II, Section 4) have no real meaning for these people. Indeed, they are little more than the road-kill of the justice system grinding on. And, frankly, most of the gushing is simply that--talk. The phrase "liberty and justice for all" really ought to be changed to "liberty and justice for those who can pay for it."

¶33 Legally, our decision is correct. To that extent I concur.

13

/S/ JAMES C. NELSON


Justice Patricia O. Cotter joins in the concurrence of Justice James C. Nelson.


/S/ PATRICIA O. COTTER