No. 95-064

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

DOUBLE AA CORPORATION, a Delaware corporation,

      Plaintiff, Appellant, and Cross-Respondent,

v.

NEWLAND & COMPANY, Successor Trustee
of the Raymond W. George Trust,

      Defendant and Respondent,

  and

JAMES W. SIEVERS,

      Intervenor Defendant, Respondent,
      and Cross-Appellant.

FILED

OCT 24 1995

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:  District Court of the Sixth Judicial District,
             In and for the County of Park,
             The Honorable Mark P. Sullivan, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

            Joseph T. Swindlehurst, Huppert & Swindlehurst,
            Livingston, Montana

      For Respondent:

            James P. Harrington, Attorney at Law,
            Butte, Montana (for Newland & Company)

            John T. Jones and Harlan B. Krogh,
            Moulton, Bellingham, Longo & Mather,
            Billings, Montana (for James W. Sievers)

      For Amicus:

            Rockwood Brown, Brown, Gerbase, Cebull,
            Harman & Ross, Billings, Montana
            (for Kenneth D. George and Shirley G. Bragg)

Submitted on Briefs:  May 25, 1995
          Decided:  October 24, 1995

Filed:

_____
Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

Plaintiff Double AA Corporation filed a complaint in the District Court for the Sixth Judicial District in Park County, in which it alleged that Shirley Bragg, trustee of the Raymond W. George Trust, who has been succeeded as trustee by Newland & Company, breached a buy-sell agreement for the sale of a ranch held by the trust and that it was entitled to specific performance. The trustee, as well as James W. Sievers, the intervenor, opposed Double AA's request for specific performance. After a trial, the District Court entered its findings, conclusions, and judgment, which denied Double AA's request for specific performance but awarded it damages. Double AA appeals the District Court's findings, conclusions, and judgment, and Sievers cross-appeals specific findings. We affirm the judgment of the District Court.

The issue on appeal is whether the District Court abused its discretion when it denied Double AA's request for specific performance.

The issue raised on cross-appeal is whether the District Court erred when it made findings of fact numbered 73 and 74.

### FACTUAL BACKGROUND

The ranch, which is the subject of the dispute, formerly belonged to Raymond George. Raymond died in 1974 and, as provided in his will, left the ranch in a testamentary trust for his family. His daughter Maxine was designated the trustee. The trust provided that his wife, Olga George, would receive income from the trust for

2

her life and that the George children held remainder interests as follows: Maxine George--three-ninths, as well as a first option to purchase from the other remaindermen; Leo George--two-ninths; Kenneth George--two-ninths; and Shirley Bragg--two-ninths. Maxine died in 1980, and eventually the remaindermen agreed with her surviving husband, Cleto McPherson, that he would be entitled to her share and first option. Shirley Bragg became the trustee following Maxine's death.

On December 13, 1989, Double AA Corporation, a Delaware Corporation whose sole shareholders are Charles Allmon and Gwen Allmon, agreed with Shirley Bragg, who at that time was the trustee of the Raymond W. George trust, to purchase the George family's ranch in the Paradise Valley south of Livingston. Shirley agreed on behalf of the trust to convey the property, and a substantial deposit was transferred.

At trial, Shirley testified that in 1988 she had received advice from Wes Johnson, a financial planner for Investment Diversified Services (IDS), that if the trust did not sell the ranch there would be tax consequences in an amount between $200,000 and $300,000 at the time of Olga's death. Olga was nearly 90 years old when Shirley received this advice. Wes Johnson admitted he had little knowledge about taxes and was not qualified to render tax advice. He also testified that he was paid on a commission basis, and as a result felt pressure to locate investors for IDS. He encouraged that the ranch be sold and the proceeds be invested with

3

IDS. Shirley testified that she reluctantly agreed to sell because of Johnson's tax advice.

Shirley petitioned the District Court to approve the sale of the ranch. Sievers intervened and objected on the basis that he had purchased a five-ninths remainder and a first option to buy from the other remaindermen. In September 1990, District Court Judge Byron Robb, granted the petition to confirm the sale and dismissed Sievers' objection. He specifically found that:

> While the testator here gave his daughter Maxine a right to purchase the interest of the other children in the ranch, I find it obvious this was personal to her because she remained on the place while the others left. I thus conclude it doubtful such option passed to Maxine's husband and sole heir, Cleto McPherson, and although the other children made agreements with him to have such privilege at a different value than Mr. George contemplated, Cleto never exercised such right and now has no ability to do so or to keep the ranch in the family, and I find it most tenuous that Grandpa George ever intended that such option to purchase would pass to or be enforceable by a stranger as Mr. Sievers contends. Further, the trustee was not a party to such option agreements and is not bound by them.

In November 1990, an attorney from Livingston informed Shirley that no taxes would be due as a result of Olga's death. On December 2, 1990, Shirley sent Charles Allmon a letter in which she advised him that she wanted to rescind the agreement with Double AA. On April 2, 1991, Shirley filed a motion to dismiss her petition for a declaration of her right and authority to sell the trust property and to cancel the sale to Double AA. The District Court denied her motion and ordered the sale to proceed. We affirmed the District Court's conclusion that Shirley had the right

4

and authority to sell the ranch and affirmed the District Court's finding that the sale was fair and reasonable. *In re Raymond W. George Trust* (1992), 253 Mont. 341, 834 P.2d 1378. However, we reversed that part of the District Court's decision which granted specific performance because that issue had not been raised or litigated. *In re George Trust*, 834 P.2d at 1381-82.

After our decision in *In re George Trust*, Double AA filed this action for specific performance. Sievers intervened and opposed specific performance because he claimed that in April 1988 he purchased a three-ninths remainder interest from Cleto, in addition to Cleto's first option to purchase from the other remaindermen. He added that in August 1988 he purchased Leo's two-ninths remainder interest.

A nonjury trial was held on June 22 and 23, 1994. Shirley testified that the erroneous information she had received from Johnson was confirmed by Legal Tech, a Billings accounting firm. However, she was informed in November 1990 that Olga's death would not result in any immediate tax consequences. Instead, she learned that capital gains tax in the amount of $400,000 would be due upon sale of the ranch to Double AA. She testified that the attorney who represented her prior to the sale had not advised her that Johnson's advice was incorrect. There was also contradicted testimony that her previous attorney was to receive a percentage of the broker's commission which was to be paid by Double AA.

5

In October 1994, the District Court entered its findings of fact, conclusions of law, and judgment. The District Court held that specific performance was improper, but awarded Double AA money damages for breach of contract. The court further found that Sievers did not obtain a binding first option to purchase the ranch from the remaining beneficiaries.

Double AA appeals from the District Court's decision, and Sievers cross-appeals from the District Court's findings that he did not have a valid first option to purchase.

ISSUE 1

Did the District Court abuse its discretion when it denied Double AA's request for specific performance?

We review a district court's denial of a request for specific performance to determine whether the district court abused its discretion. *Larson v. Undem* (1990), 246 Mont. 336, 342-43, 805 P.2d 1318, 1322.

Double AA acknowledges that specific performance is an equitable remedy within the District Court's discretion but suggests that the court's discretion is narrow. It contends that the District Court did not exercise sound discretion.

The trustee claims, and Sievers agrees, that under the circumstances the District Court did not abuse its discretion.

Specific performance is an equitable remedy which requires performance of a contract based on the precise terms contained in

6

the contract. *Siefert v. Siefert* (1977), 173 Mont. 501, 504, 568 P.2d 155, 156.

> " *[S]pecific performance will be ordered only on equitable grounds in view of all the conditions surrounding the particular case. . . ."*
> *"A bill in equity for specific performance is an appeal to the conscience of the court, and generally, in such a proceeding, the inquiry must be whether, in equity and good conscience, the court should specifically enforce the contract.* Accordingly, specific performance will be granted when it is apparent from a view of all the circumstances of the particular case that it will serve the ends of justice, and it will be withheld when, from a like view, it appears that it will produce hardships or injustice to either party
> . . . ."

*Siefert*, 568 P.2d at 157 (quoting 81 C.J.S. *Specific Performance* § 3). In *Siefert*, we acknowledged that the appropriateness of specific performance depends on the facts and circumstances of the case. *Siefert*, 568 P.2d at 157.

In determining whether a contract should be specifically enforced, courts look at the contract, as well as the relationship of the parties, and will determine if the contract to be enforced is fair and reasonable.[1] Factors courts consider include execution

---

[1] In *In re George Trust*, we upheld the District Court's finding that Double AA's offer of $1,300,000, along with the other benefits, was fair and reasonable. We noted that:
> The validity of the contract between the trust and Double AA and any rights of the parties resulting from the contract were not the subject of the litigation. The evidence presented only regarded the fairness and reasonableness of Double AA's offer and the agreement that the parties entered.

*In re George Trust*, 834 P.2d at 1381. We do not construe the above language to mean that, as to whether specific performance was appropriate, the contract was fair and reasonable because we did not address whether it would be fair and reasonable to specifically enforce the contract.

7

of a contract under circumstances unfavorable to the defendant because of lack of advice, and the difference in the parties' business experience and knowledge. 81 C.J.S. *Specific Performance* § 49 (1977).

In addition to the above guidelines, Montana statutes identify some situations in which specific performance is appropriate. Specific performance may be necessary when pecuniary compensation for a defendant's failure to perform pursuant to the terms of a contract does not afford adequate relief. Section 27-1-411(2), MCA. More specifically, in contracts involving the sale of land, "[i]t is to be presumed that the breach of an agreement to transfer real property cannot be adequately relieved by pecuniary compensation . . . ." Section 27-1-419, MCA.

Section 27-1-415, MCA, however, provides circumstances in which a party cannot be compelled to specifically perform.

> Specific performance cannot be enforced against a party to a contract in any of the following cases:
> . . . .
> (2) if it is not, as to him, just and reasonable;
> (3) if his assent was obtained by the misrepresentations, concealment, circumvention, or unfair practices of any party to whom performance would become due under the contract or by any promise of such party which has not been substantially fulfilled; or
> (4) if his assent was given under the influence of mistake, misapprehension, or surprise . . . .

Section 27-1-415, MCA.

The District Court made specific findings, which are supported by substantial evidence, in relation to the above-listed equitable

8

considerations and statutes. The court found: (1) Double AA knew, or should have known, before the sale, that Shirley misapprehended facts material to the contract and Shirley testified she told Charles that she felt pressured to sell because of her erroneous belief regarding the potential tax liability; (2) Shirley was a victim of mistaken information and inaccurate advice. The "mistaken fact [regarding taxes] more than anything else was the reason Shirley consented to [the] sale [of] the George family ranch"; (3) Charles and Shirley had extremely divergent backgrounds in business transactions. Charles was a well-known professional investor, had experience in multi-million dollar transactions, and had extensive education, background, and experience in business. To the contrary, Shirley was a somewhat unsophisticated trustee who was neither prepared for her position as trustee nor educated in business nor business transactions, negotiations, or taxes.

Finally, the court found that the land was not unique to Double AA. Charles testified that the ranch was no more unique than land that he already had except that it was contiguous with property he owned in the Paradise Valley. The court found that the loss would impose a greater hardship on the George Family Trust than Double AA because Shirley's decision to sell was a direct result of the incorrect tax advice, and the ranch had been in the George family for over 100 years.

Based on its findings, the court concluded that, in light of the circumstances surrounding the execution of the contract,

9

specific performance was not appropriate because the contract was not fair, just, and reasonable, and Shirley's assent was based on a mistake or misapprehension. Section 27-1-415, MCA.

Double AA argues that a misunderstanding or mistake regarding tax consequences is not a sufficient reason to avoid the transaction and that the exceptions to specific performance codified in § 27-1-415, MCA, do not apply.

While a misapprehension or mistake regarding taxes is insufficient to avoid a contract, *Quinn v. Briggs* (1977), 172 Mont. 468, 475, 565 P.2d 297, 301, such a misunderstanding or mistake, in light of the surrounding circumstances, may be a sufficient reason to deny specific performance as an equitable remedy. *See* 11 Samuel Williston, Williston on Contracts § 1427 (3d ed. 1968); Corbin on Contracts § 1166 (1964).

Moreover, we have upheld the denial of specific performance where the defendant relied on advice from her attorney which produced factual and legal misapprehensions. *Stovall v. Watt* (1980), 187 Mont. 439, 610 P.2d 164. In *Stovall*, we recognized that specific performance is improper if there is a mistake as set forth in § 27-1-415(4), MCA, or if the circumstances show that specific performance would impose a considerable hardship. *Stovall*, 610 P.2d at 167 (citing *Siefert*, 568 P.2d at 157). Based on the total circumstances, and balancing the equities, we upheld the district

10

court's denial of a request for specific performance against the seller. *Stovall*, 610 P.2d at 167-68.

The facts in *Stovall* are distinguishable from this case. Nonetheless, the principles on which we relied in *Stovall* apply. Here, the District Court found that specific performance would impose a greater hardship on the seller than denial would impose on the buyer.

Double AA also challenges the District Court's findings regarding Shirley's mistake or misapprehension because testimony indicated that other factors motivated her to sell, and evidence contradicts her position. In the exercise of its discretion, part of the District Court's responsibility was to weigh conflicting testimony. The district court is in a better position to observe the credibility and demeanor of witnesses than this Court. We will not second guess the district court's determination regarding the strength and weight of conflicting testimony. *See In re Marriage of Newton* (1992), 255 Mont. 463, 466, 844 P.2d 47, 49.

Based on the equitable principles and statutory criteria set forth above, evidence in the record, and the District Court's findings, including the parties' unequal positions and the mistaken information on which the trustee relied, we hold that the District Court did not abuse its discretion. We affirm the District Court's denial of Double AA's request for specific performance.

Did the District Court err when it made findings of fact numbered 73 and 74?

Our standard of review of a district court's findings of fact is whether they are clearly erroneous. *Columbia Grain Int'l v. Cereck* (1993), 258 Mont. 414, 417, 852 P.2d 676, 678.

Sievers contends that we should vacate the District Court's findings of fact numbered 73 and 74 because the court improperly found that Sievers did not acquire a first option against Shirley Bragg, Kenneth George, and Leo George. Sievers contends that the findings were not relevant to Double AA's request for specific performance, and he has not had an adequate opportunity to introduce evidence in support of his position. Sievers adds that the District Court was not empowered to enter a judgment which affected the property rights of individuals who were not parties to the litigation. In making that argument, he relies on § 25-9-201, MCA, and *Warnack v. Coneen Family Trust* (1994), 266 Mont. 203, 879 P.2d 715.

After Sievers raised this issue by cross-appeal, we allowed Shirley Bragg and Kenneth George to file an amicus brief in support of their position. They contend that unlike the nonparty in *Warnack*, they are not complete strangers to the litigation.

In the initial proceeding before Judge Robb, Sievers intervened and asserted he had a first option. Judge Robb rejected

12

Sievers' position. He asserted the same argument when he intervened in the present case; Judge Sullivan also rejected Sievers' contention. In findings of fact numbered 73 and 74, the court reaffirmed Judge Robb's prior determination that the option did not pass to Sievers. In finding of fact number 74, the court found specifically that Sievers did not purchase a first option which is binding on the other remaindermen.

Sievers now contends, after two district court judges have found contrary to the position he asserted by intervening, that those courts were without authority to make the challenged findings because the other remaindermen were not parties to the present action. We disagree and conclude that Sievers' reliance on procedural flaws is an insufficient basis on which to set aside the District Court's findings.

Section 25-9-201, MCA, states that subject to Rule 54(b), M.R.Civ.P., a judgment may be given for or against one or more of several plaintiffs and for or against one or more of several defendants. In *Warnack*, we held that the District Court erred when it awarded a prescriptive easement to a nonparty. We stated that:

> [I]t is a fundamental principle of our jurisprudence that it is only against a party to the action that a judgment can be taken and that the judgment is not binding against a stranger to the action.

*Warnack*, 879 P.2d at 718 (quoting *Moore v. Capitol Gas Corp.* (1945), 117 Mont. 148, 156, 158 P.2d 302, 306). In *Warnack*, we recognized that

13

the above rule applied where a judgment was awarded in favor of a nonparty.

However, this case is distinguishable. Section 25-9-201, MCA, does not preclude a party who voluntarily intervenes from having an adverse judgment entered against him or her. *See* Rule 54(b), M.R.Civ.P. (stating that a final judgment may grant relief to which the party is entitled). Sievers voluntarily intervened and asserted that he purchased a valid first option. The interested remaindermen did not intervene to protect their interests. However, unlike *Warnack*, the remaindermen were aligned with the trustee's position. Additionally, the remaindermen were not strangers to the action; they are heirs of the trustor and have an ownership interest in the trust. A decision against the trustee would adversely affect the remaindermen.

Sievers contends that it would be unfair to allow parties to benefit from a judgment if they did not appear to litigate the merits. The logical conclusion of Sievers' position is that he may intervene and assert a position contrary to the remaindermen, but if he loses, claim the adverse decision was not binding. Sievers has merely asserted a procedural flaw from which he claims he should benefit because he is dissatisfied with the outcome. Despite the fact that the remaindermen did not intervene to protect their position, they were aligned with the trustee. Sievers introduced evidence in support of his position and must abide by

14

the District Court's decision.  Absent a specific indication of how the District Court's findings were clearly erroneous, or an indication that the court erred as a matter of law, we must affirm the District Court's findings.  Sievers has failed to indicate that the District Court's findings were clearly erroneous. Therefore, we affirm the District Court's findings.

The judgment of the District Court is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices