FILED

August 12 2014

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 13-0665

IN THE SUPREME COURT OF THE STATE OF MONTANA

2014 MT 215

IN RE THE PARENTING OF:

G.J.A.,

      A Minor Child.

JEREMY J. ANDERSON,

      Petitioner and Appellant,

  and

CHRISTINE R. DEAFENBAUGH,

      Respondent and Appellee.

| | |
|---|---|
| APPEAL FROM: | District Court of the Eighth Judicial District, In and For the County of Cascade, Cause No. CDR-09-092(b) Honorable Julie Macek, Presiding Judge |

COUNSEL OF RECORD:

      For Appellant:

            Jason T. Holden; Faure Holden, Attorneys at Law, P.C.; Great Falls, Montana

      For Appellee:

            Robert M. Kampfer; Attorney at Law; Great Falls, Montana

Submitted on Briefs: July 16, 2014

Decided: August 12, 2014

Filed:

_____
                          Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Jeremy J. Anderson appeals the Eighth Judicial District Court's entry of a final parenting plan for the parties' minor child, G.J.A. The District Court adopted the Standing Master's findings of fact, conclusions of law, and decree establishing a final parenting plan. We address the following issues on appeal:

¶2 *1. Whether the District Court applied the correct standard of review.*

¶3 *2. Whether the District Court erred in adopting the Master's findings of fact.*

¶4 *3. Whether the parenting plan is in the best interests of G.J.A.*

¶5 We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

¶6 Christine R. Deafenbaugh met and began dating Anderson in 2005 at Montana State University in Bozeman, Montana. The parties had one child together, G.J.A., who was born in Minnesota in 2007. Anderson was present for the birth. In September 2007, Anderson and Deafenbaugh moved together to Fort Benton, Montana, where they stayed until August 2008.

¶7 In September 2008, Deafenbaugh enrolled in a five-month esthetician program with the Aveda Institute in Minnesota. G.J.A. stayed with Anderson in Montana while Deafenbaugh completed her esthetician training, but Deafenbaugh and G.J.A. visited each other frequently during this time. Anderson and Deafenbaugh separated shortly after Deafenbaugh completed the program in 2009.

¶8    Anderson filed a petition for a parenting plan and child support on February 13, 2009. From the date of filing until September 2013, Anderson and Deafenbaugh shared parenting time equally, eventually agreeing to an interim parenting plan with alternating five-week custody.

¶9    The District Court referred the matter to a Standing Master pursuant to the Eighth Judicial District's Charter Order. The Master held a bench trial on March 20-21, 2013. On June 5, 2013, the Master issued findings of fact, conclusions of law, and a final decree establishing a final parenting plan. The plan awarded primary custody to Deafenbaugh. Anderson filed his exceptions to the Master's findings, conclusions, and decree. Following a hearing on Anderson's objections, the District Court issued an order on August 29, 2013, affirming the Master's findings of fact, conclusions of law, and decree and adopting the decree as the judgment of the court. Anderson appeals the District Court's order.

## DISCUSSION

¶10   *1. Whether the District Court applied the correct standard of review.*

¶11   Because this case involves both a Standing Master and the District Court, two standards of review are relevant: the standard the District Court applies to the Master's report and the standard we apply to the District Court's decision. *See Heavirland v. State*, 2013 MT 313, ¶ 13, 372 Mont. 300, 311 P.3d 813; *Cook v. Niedert*, 142 F.3d 1004, 1009 (7th Cir. 1998). This Court reviews a district court's decision de novo to determine whether it applied the correct standard of review to a master's findings of fact and

3

conclusions of law. *Heavirland*, ¶ 15. The first issue is whether the District Court correctly applied a clear error standard to the Standing Master's findings of fact. Anderson argues that the standard of review should be de novo.

¶12 "Rule 53(e)(2), M. R. Civ. P., is clear that, in non-jury actions such as this, 'the [trial] court shall accept the master's findings of fact unless clearly erroneous.'" *In re Marriage of Doolittle*, 265 Mont. 168, 171, 875 P.2d 331, 334 (1994) (quoting M. R. Civ. P. 53(e)(2)). The plain language of the rule, which has remained unchanged in pertinent part since *Doolittle*, provides that a district court may modify or reject a master's findings only if the master clearly erred. Consistent with this language, the Eighth Judicial District Court's Charter Order establishing a district standing master states that "the standard of district court review of the District Standing Master's findings of fact is whether the findings of fact are clearly erroneous, giving due deference to the broad discretion of the Master to assess the relative credibility of the witnesses and the weight of the evidence." Charter Or. Establishing Dist. Standing Master, *In re the Establishment of a Dist. Standing Master for All Dep'ts of This Dist. Ct.* 12 (Mont. 8th Jud. Dist. June 25, 2010).

¶13 Anderson points out that, under federal law, a district court's review of a magistrate's findings of fact is de novo where objections have been made. The pertinent statute, 28 U.S.C. § 636, contains language similar to that in Rule 53(e)(2) and § 3-5-126(2), MCA. It provides in addition, however, that when reviewing a magistrate's report, "[a] judge of the court shall make a de novo determination of those portions of the

4

report or specified proposed findings or recommendations to which objection is made." The de novo standard for review of the proposed findings and recommendations of a federal magistrate judge found in 28 U.S.C. § 636 does not appear in Rule 53(e)(2) or § 3-5-126(2), MCA.

¶14 The federal Rule 53, which also pertains to masters, likewise contains significant differences from Montana's Rule 53. The federal rule provides in part that "[t]he court must decide de novo all objections to findings of fact made or recommended by a master, unless the parties, with the court's approval, stipulate that . . . the findings will be reviewed for clear error[.]" Fed. R. Civ. P. 53. This Court adopted changes to Montana's Rules of Civil Procedure in 2011, but for certain rules we "determined it is appropriate for Montana to update the language of an existing Rule, instead of changing the Rule to reflect the corresponding Federal Rule." Sup. Ct. Ord. No. AF 07-0157, April 26, 2011, eff. Oct. 1, 2011. Montana's Rule 53 contains substantive differences from the federal rule and must be applied in accordance with its own language.

¶15 The last sentence of M. R. Civ. P. 53(e)(2) ("After hearing, the court may adopt the report, modify it, reject it in whole or in part, receive further evidence, or recommit it with instructions.") is nearly identical to language found in § 3-5-126(2), MCA, which explains the options available to a court when reviewing the findings and conclusions of a standing master:

> The court, after a hearing, may adopt the findings and conclusions or order and may modify, reject in whole or in part, receive further evidence, or recommit the findings and conclusions or order with instructions.

5

As noted above, however, Rule 53(e)(2) states additionally that "the court must accept the master's findings of fact unless clearly erroneous." This clarification of the applicable standard of review is not found in § 3-5-126(2), MCA.

¶16 Anderson argues that the clear error standard set forth in Rule 53(e)(2) should not apply to the District Court's review of the standing master, because a plenary or de novo standard is mandated by the language in § 3-5-126(2), MCA. Anderson emphasizes that the statute permits a district court to receive further evidence and to adopt, modify, reject, or recommit the findings and conclusions of a master. He argues that this language implicitly directs the District Court to apply a de novo standard of review to a master's findings. He also argues that the de novo standard set forth in 28 U.S.C. § 636 suggests that a de novo standard is appropriate here. He claims that the District Court is "neither bound by, nor limited to, the record created before a standing master." Without citing to any rules or cases, he suggests that the District Court's ability to receive further evidence is "the essence of plenary or *de novo* review."

¶17 Anderson is incorrect that § 3-5-126(2), MCA, sets forth a standard of review that differs from what Rule 53(e)(2) prescribes. Section 3-5-126(2), MCA, is not inconsistent with the language of Rule 53(e)(2); both expressly allow the District Court to adopt the Master's report, modify it, reject it in whole or in part, receive further evidence, or recommit it with instructions. The statutory language at issue lists various actions that may be taken by a district court upon receiving a master's findings; these actions may be taken only if they are warranted by the record, assessed in light of the applicable standard

6

of review set forth in Rule 53. *See Skelton Ranch, Inc. v. Pondera Co. Canal & Reservoir Co.*, 2014 MT 167, ¶ 25, __Mont.__, __P.3d__.

¶18 Anderson suggests that Rule 53(e)(2) is limited to special masters and notes that "there are significant differences between standing masters . . . and a *special* master," citing to *Beals v. Beals*, 2013 MT 120, ¶ 9, 370 Mont. 88, 300 P.3d 1158. The issue in *Beals* was whether a party could appeal to this Court directly from a standing master's findings without first submitting objections to the district court. The appellant invoked § 3-5-113(1)(c), MCA, a statutory provision that relates "specifically to special masters and not standing masters." *Beals*, ¶ 9. We observed that "[t]he appointment of a standing master . . . is controlled by different statutory provisions." *Beals*, ¶ 10. The differences between standing and special masters are not relevant here, however, because Rule 53(e) applies to both. Rule 53(a)(1)(A-C) defines three types of master: standing masters, special masters, and water masters. Rule 53(b) limits the referrals that may be made to special masters and allows referrals to standing and water masters as prescribed by statute or court rule. The remaining subsections of the rule, Rule 53(c-e), do not apply to one type of master to the exclusion of the others. These subsections apply to all masters, including standing masters. The clear error standard in Rule 53(e)(2) applies to the standing master's findings of fact in this case.

¶19 In sum, the District Court's power to "modify, reject in whole or in part, receive further evidence, or recommit the findings and conclusions or order with instructions" is tethered to the clear and unequivocal articulation of the applicable standard of review in

7

Rule 53. The federal statutes and rules do not apply here, and Montana's rules and statutes do not direct the District Court to apply a de novo standard to a master's finding of fact. A district court may receive additional evidence and any findings made on the basis of that evidence will be reviewed by this Court for clear error. As to evidence taken by a standing master, however, a district court may not modify or reject the master's findings by substituting its own view of the evidence for that of the master, as Anderson's isolated reading of § 3-5-126(2), MCA, might suggest. *Skelton*, ¶ 63. The District Court correctly applied a clear error standard of review to the Standing Master's findings of fact.

¶20　*2. Whether the District Court erred in adopting the Master's findings of fact.*

¶21　Anderson argues that many of the Master's findings of fact are incorrect. Consistent with our resolution of issue one, the proper standard for reviewing the Master's findings of fact is whether they are clearly erroneous; findings of fact are not reviewed for correctness. A finding is clearly erroneous if it is not supported by substantial evidence, if the Master misapprehended the effect of the evidence, or if its review of the record convinces the reviewing court that the Master made a mistake. *See Skelton*, ¶ 27; *In re Marriage of Olson*, 2008 MT 232, ¶ 20, 344 Mont. 385, 194 P.3d 619.

¶22　Anderson asserts error in several factual findings pertaining to specific events, including whether Anderson approved of Deafenbaugh's decision to move to Minnesota to attend the Aveda School; Anderson's motivations for filing his petition for a parenting

8

plan; whether Deafenbaugh interfered with Anderson's parenting time by requiring Anderson to drive to Minnesota to retrieve G.J.A. on one occasion; whether Deafenbaugh might move to less appropriate housing for G.J.A. in the future; whether Deafenbaugh took excessive vacations without G.J.A.; whether G.J.A.'s kindergarten teacher gave credible testimony; and whether Anderson inappropriately exposed G.J.A. to violent movies and sports. The District Court considered each of Anderson's objections, reviewed the record, and cited specific testimony from the hearing to find substantial evidence supporting the Master's findings. As the District Court concluded, "[t]his was a case involving two good parents who live in separate states and have a child of kindergarten age." The record supports the conclusion that, although both parents are loving and capable, it was in the best interests of G.J.A. to reside with one parent during the school year and to reside with the other parent during the summer.

¶23 In light of the entire record, the Master found that Deafenbaugh should be the parent with whom G.J.A. resides during the school year. The District Court determined that this finding was not clearly erroneous. Anderson has referenced other testimony in the record that would support a contrary determination, but conflicting testimony does not establish clear error. *Weinheimer Ranch v. Pospisil*, 2013 MT 87, ¶ 19, 369 Mont. 419, 299 P.3d 327 ("When a reader reasonably can deduce two or more inferences from the facts, the reviewing court lacks power to substitute its deductions for those of the finder of fact.").

9

¶24 The record shows that the Master gave due consideration to testimony presented by both parties and wrote thorough factual findings. The District Court carefully considered each of Anderson's exceptions. The court reviewed the record and correctly applied the clear error standard of review. We have determined from our own review of the record that the findings are supported by substantial evidence and that the Standing Master did not misapprehend the effect of the evidence. We are not convinced that the Standing Master made a mistake and we conclude that the District Court did not err in adopting the Master's findings.

¶25 *3. Whether the parenting plan is in the best interests of G.J.A.*

¶26 When considering the best interests of the child in a custody dispute, this Court will not overturn the District Court unless we determine that there has been a clear abuse of discretion. *Czapranski v. Czapranski*, 2003 MT 14, ¶ 10, 314 Mont. 55, 63 P.3d 499. In determining whether a parenting plan is in the best interests of a minor child, the district court is required to consider the factors enumerated in § 40-4-212, MCA. *Crowley v. Crowley*, 2014 MT 42, ¶ 45, 374 Mont. 48, 318 P.3d 1031. As a general principle, we will not find an abuse of discretion where the court adopts a parenting plan that favors stability and convenience over the equal apportionment of time between parents. *In re Marriage of Dennison*, 2006 MT 56, ¶ 16, 331 Mont. 315, 132 P.3d 535. We review conclusions of law to determine if they are correct. *Olson*, ¶ 20.

¶27 Anderson argues that the final parenting plan is not in G.J.A.'s best interests because he believes he served as G.J.A.'s primary caretaker for "the vast majority" of

10

G.J.A.'s life and because he has less time to spend with G.J.A. during the summer months. The District Court carefully considered Anderson's arguments and explained its determination that substantial credible evidence supported the Master's finding that Anderson and Deafenbaugh "have parented G.J.A. essentially equally." Notwithstanding that Anderson did not prefer parenting G.J.A. in the summer, the court adopted the Master's conclusion that G.J.A. would be better served by residing with Anderson in the summer and Deafenbaugh during the school year.

¶28 Anderson also contests several of the conclusions of law that supported the Master's application of the factors in § 40-4-212, MCA, including that each parent cared for G.J.A. equally, that both parents provided stable and continuous care, that G.J.A.'s interactions with Anderson are more focused on work than when G.J.A. is with Deafenbaugh, that both parents have engaged in maneuvering that disrupted G.J.A's contact with the other, and that Anderson struggles to effectively collaborate with Deafenbaugh in resolving co-parenting issues.

¶29 The court faced the difficult task of apportioning G.J.A.'s time between two concerned and geographically distant parents while considering the child's best interests. The court's order demonstrates that it gave appropriate consideration to the statutory factors. The court observed that "the standing master is required to weigh and measure each fact" and make a determination as to the child's best interests. Where the court "properly considered the factors set forth in § 40-4-212, MCA, and set forth an analysis of the facts of the case to support its custody decision, there is no clear abuse of

11

discretion." *In re Marriage of Epperson*, 2005 MT 46, ¶ 35, 326 Mont. 142, 107 P.3d 1268. As we have stated before, "[t]he court needed to select a primary parent and it did so." *Crowley*, ¶ 46. In light of the entire record, we hold that the court did not abuse its discretion and that its conclusions of law are correct.

## CONCLUSION

¶30 Affirmed.

/S/ BETH BAKER

We concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ PATRICIA COTTER
/S/ JIM RICE