Justice James Jeremiah Shea delivered the Opinion of the Court.
¶ 1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.
¶ 2 Paul Boland (Paul) appeals the Order of the Eighth Judicial District, Cascade County, granting in part Gerald (Jerry) Boland's Petition for an Order of Protection. We affirm.
¶ 3 Jerry and Paul are cousins. Jerry's father, John, is brother to Paul's father, Ed. Jerry and Paul have been feuding for years and are on opposite sides of pending litigation involving multiple family members. On March 17, 2018, Jerry was in downtown Great Falls, helping to organize the annual St. Patrick's Day Parade. Jerry was wearing a hat given to him by his Uncle Ed-Paul's father. Jerry testified the hat was important to him because Ed and Jerry were very close and spent a lot of time together before Ed passed away. Paul testified that he was upset Jerry was wearing the hat. Daniel Rearden, a friend of both Jerry and Paul, testified that a few minutes before the altercation Paul said to Rearden, "If he (Jerry) walks by me one more time with that hat on, I don't know what I'm going to do." When Jerry walked past Paul again, Paul told Jerry to "[t]ake that hat off. You don't deserve to wear that hat." Jerry did not comply and waved Paul off. Jerry testified Paul then attacked him, grabbing him from behind by the coat and shoulders. Paul testified that as Jerry passed Paul, his leg touched Paul's, and Paul felt "very threatened" and did not know what to do, so he grabbed Jerry's arms and tried to restrain him. Jerry testified he tried to push Paul off, but Paul managed to drag him toward a flatbed trailer parked nearby. The two wrestled, and Jerry hit his head on the metal railing of the trailer.
¶ 4 Another man, Jared Jones, testified he observed Paul yelling at Jerry, and Paul and Jerry shoving and grabbing at each other's coats. Jones testified that Paul did not attack Jerry from behind, that "[i]t was all face-to-face." Jones testified that after Jerry hit his head on the trailer, Jones, "jumped on top of Paul" to restrain him. Paul then grabbed at Jerry's legs to take him down, all the while swearing at Jones to "get the fuck off of him." Rearden also got between Paul and Jerry to stop the altercation. The two were separated, and Jones told Paul to get up and walk away.
¶ 5 Jerry reported the assault to the police and sought medical treatment for a concussion and neck injury. No criminal charges were filed against either Paul or Jerry. On March 23, 2018, Jerry filed a Petition seeking an Order of Protection for himself, his immediate family, and his business colleagues and employees from Paul. On April 2, 2018, the District Court granted a Temporary Ex Parte Order of Protection and set a hearing date. On May 2, 2018, the District Court held a hearing on Jerry's Petition. During the hearing, Jerry testified that he wanted an order of protection because he feared for the safety of his family, his "working associates," and himself "due to [Paul's] violent tendencies." Both Jones and Rearden testified that Paul was the initial aggressor. Paul testified that he was upset with Jerry because he believed Jerry lied under oath the previous year. Paul also claimed there was an ongoing dispute over a piece of property that Jerry purportedly purchased from Ed but never paid for.
¶ 6 On June 11, 2018, the District Court issued its Findings of Fact and Conclusions of Law. The District Court granted Jerry's Petition for an Order of Protection for a two-year period for Jerry personally but denied the Petition as it pertained to Jerry's family and associates. Paul was prohibited from contacting or communicating with Jerry and was prohibited from coming within 500 feet of Jerry. Paul appeals.
¶ 7 This Court will not overturn a district court's decision to continue, amend, or make permanent an order of protection absent an abuse of discretion. Boushie v. Windsor , 2014 MT 153, ¶ 8, 375 Mont. 301, 328 P.3d 631 ; Keller v. Trull , 2007 MT 108, ¶ 7, 337 Mont. 188, 158 P.3d 429 ; see also In re Marriage of Coogler , 2004 MT 122, ¶¶ 14, 24, 321 Mont. 243, 90 P.3d 414 (citing § 40-15-202, MCA ). A district court abuses its discretion when it acts arbitrarily without conscientious judgment or exceeds the bounds of reason resulting in substantial injustice. Boushie , ¶ 8; Lockhead v. Lockhead , 2013 MT 368, ¶ 12, 373 Mont. 120, 314 P.3d 915. This Court reviews a district court's findings of fact to determine if they are clearly erroneous. In re Marriage of Olson , 2008 MT 232, ¶ 20, 344 Mont. 385, 194 P.3d 619. A finding of fact is clearly erroneous if the district court "misapprehended the effect of the evidence, or our review of the record convinces us the district court made a mistake." In re Marriage of Olson , ¶ 20.
¶ 8 Montana law regarding temporary orders of protection states in relevant part:
(1) A petitioner may seek a temporary order of protection from a court ... The petitioner shall file a sworn petition that states that the petitioner is in reasonable apprehension of bodily injury or is a victim of one of the offenses listed in [ § 40-15-102, MCA,] has a relationship to the respondent if required by [ § 40-15-102, MCA,] and is in danger of harm if the court does not issue a temporary order of protection immediately.
(2) Upon a review of the petition and a finding that the petitioner is in danger of harm if the court does not act immediately, the court shall issue a temporary order of protection that grants the petitioner appropriate relief....
Section 40-15-201, MCA ; see also § 40-15-102, MCA (setting out eligibility for an order of protection); In re Marriage of Coogler , ¶ 18. Following the issuance of a temporary order of protection, a district court must hold a hearing to determine "whether good cause exists for the temporary order of protection to be continued, amended, or made permanent." Section 40-15-202(1), MCA. The district court may, "on the basis of the respondent's history of violence, the severity of the offense at issue, and the evidence presented at the hearing, determine that to avoid further injury or harm, the petitioner needs permanent protection. The [district] court may order that the order of protection remain in effect permanently." Section 40-15-204(1), MCA.
¶ 9 A district court is in a better position than this Court to observe the credibility and demeanor of witnesses. Double AA Corp. v. Newland & Co. , 273 Mont. 486, 494, 905 P.2d 138, 142 (1995). Accordingly, we will generally not second guess a district court's determination regarding the weight and strength of conflicting testimony or the weight of other evidence presented. Combs-Demaio Liv. Trust v. Kilby Butte Colony, Inc. , 2005 MT 71, ¶ 9, 326 Mont. 334, 109 P.3d 252 (internal citations omitted); Double AA Corp. , 273 Mont. at 494, 905 P.2d at 142 ; see also Boushie , ¶ 12.
¶ 10 In this case, the District Court determined that Jerry was in reasonable apprehension of bodily injury from Paul and that an Order of Protection was appropriate. However, the District Court concluded there was not a basis for a permanent order of protection based on the criteria of § 40-15-204(1), MCA, and no basis to conclude any member of Jerry's family or his associates were in reasonable apprehension of bodily injury from Paul.
¶ 11 Paul argues the District Court erred in granting the Order of Protection. Paul contends the record does not support that Jerry was the victim of an assault or other statutorily enumerated crime, and Jerry is not under reasonable apprehension of bodily injury. Paul further argues Jerry is not entitled to the equitable relief of an order of protection because he has "unclean hands" and is not blameless in the matter. We disagree.
¶ 12 The District Court properly conducted a hearing to determine whether good cause existed to extend the Order of Protection. See § 40-15-202, MCA. Although the hearing transcript contains conflicting evidence regarding potential motivations for the altercation between Paul and Jerry and whether Jerry first threatened Paul or vice versa, it is not this Court's role to reweigh evidence or to determine the strength of conflicting testimony. See Combs-Demaio Liv. Trust , ¶ 9. The District Court was in the best position to observe the witnesses and to assess their credibility. See Double AA Corp. , 273 Mont. at 494, 905 P.2d at 142. It is clear from the Order that the District Court acknowledged and considered Jerry and Paul's testimony, along with the testimony of eyewitnesses Jones and Rearden, and considered the relevant statutory criteria. See §§ 40-15-201, -204(1), MCA. The District Court ultimately concluded the evidence supported Jerry's contention that he was, and is, in reasonable apprehension of bodily injury and that granting Jerry's Petition for an Order of Protection was appropriate. See § 40-15-201, MCA. The District Court did not abuse its discretion by granting the Order of Protection. See Boushie , ¶ 8.
¶ 13 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review. We affirm.
We Concur:
BETH BAKER, J.
INGRID GUSTAFSON, J.
DIRK M. SANDEFUR, J.
JIM RICE, J.