DA 12-0523

IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 147

STACY LEAR,

      Petitioner and Appellee,

  v.

CARRIE A. JAMROGOWICZ,

      Respondent and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
                 In and For the County of Missoula, Cause No. DV-12-486
                 Honorable Karen Townsend, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Quentin M. Rhoades, Alison Garab, Sullivan, Tabaracci & Rhoades, P.C.,
                Missoula, Montana

        For Appellee:

                Joshua S. Van de Wetering, Van de Wetering & Baffa Law,
                Missoula, Montana

                          Submitted on Briefs:  April 3, 2013
                                   Decided:  June 4, 2013

Filed:

                            _____
                                   Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1     Stacy Lear claims she was stalked by Carrie Jamrogowicz beginning in 2002.  In February 2012, Lear sought and obtained a temporary order of protection against Jamrogowicz in a civil action.  Subsequently, Lear obtained a "no contact" order against Jamrogowicz in a criminal action.  Jamrogowicz moved to have the civil action dismissed with prejudice and Lear moved to have the civil action dismissed without prejudice.  The District Court granted Lear's motion and dismissed the civil action without prejudice.  Jamrogowicz appeals.  We affirm.

## ISSUE

¶2     A restatement of the issue is:

¶3     Did the District Court abuse its discretion in granting Lear's motion to dismiss the civil action without prejudice?

## FACTUAL AND PROCEDURAL BACKGROUND

¶4     In 1998, Lear and several others were introduced to Jamrogowicz by a mutual friend through a social networking site used by several North Carolina State University (NCSU) alumni.  Jamrogowicz subsequently moved to Cary, North Carolina, near the campus of NCSU.  Lear never developed a personal relationship with Jamrogowicz.  She never spent any one-on-one time with her nor did she engage in anything other than casual conversation on a few occasions.  Lear later moved to Leesburg, Virginia.

¶5     Lear alleged that between 1999 and 2001, she witnessed Jamrogowicz stalk a woman by gaining access to her private electronic communications and copying her lifestyle, including her haircut, hair color, and wardrobe.  She also purchased the same

kind of dog the woman owned, and joined the same organizations to which she belonged. Lear alleged that Jamrogowicz also publicly posted inappropriate and menacing comments about this other woman. After observing Jamrogowicz's actions, Lear sent an electronic communication to Jamrogowicz advising her that Lear wished to have no further communication with her. Lear asserted she later heard from friends that Jamrogowicz subsequently stalked two other women in similar fashion.

¶6     Lear alleges that Jamrogowicz began stalking her in 2002 by, among other things, changing her hairstyle to match Lear's, enrolling in the same university and taking the same classes, claiming to have the same health issues as Lear, and changing her major to match Lear's. In February 2003, Lear began taking lessons in the use of firearms and subsequently joined a national competition shooting organization. In April 2004, Lear moved from Virginia to Missoula, Montana.

¶7     In September 2004, Jamrogowicz moved to Montana and began taking firearms instruction, joined the same competition shooting organization to which Lear belonged, and ultimately engaged Lear's firearms' instructor to teach her. In 2005, Lear tested for and was subsequently hired by the Missoula Police Department. Lear kept this information confidential but discovered that Jamrogowicz had posted to a public website that Lear was seeking a police officer position in Missoula. Also in 2005, Jamrogowicz applied for and received a Montana concealed weapons permit, and began attending the same shooting competitions as Lear. In 2010, Lear reported Jamrogowicz's behavior to the police department.

¶8 Through December 2011, Lear documented numerous other aspects of her life copied by Jamrogowicz. She purchased the same type of vehicle Lear owned, joined the same gym, bought the same firearms equipment and camera, claimed the same injury for which Lear was being treated, consulted the same doctor and physical therapist (who later reported that there was no sign that Jamrogowicz had an injury), and showed up near Lear's residence and at her place of employment. During these years, Lear was frequently distressed, frightened and apprehensive; in addition, she missed work and sought counseling.

¶9 On February 3, 2012, Lear filed a petition for and obtained a temporary order of protection (TOP) from the Justice Court in Missoula against Jamrogowicz for stalking, claiming that Jamrogowicz had gained unauthorized access to Lear's private electronic communications and used this information to copy certain aspects of Lear's life. The TOP was to remain in full force until August 3, 2012.

¶10 In accordance with applicable statutes, a hearing was scheduled for February 22, 2012, to determine if the TOP should become a permanent order of protection. Section 40-15-202(1), MCA. Prior to the hearing, Jamrogowicz moved to vacate the scheduled hearing to allow her to conduct discovery, and agreed to the terms of the TOP until the rescheduled hearing was held. The Justice Court granted Jamrogowicz's motion and issued a discovery scheduling order. Lear claims that during discovery in Justice Court, she provided approximately 500 pages of responses to interrogatories, requests for admissions and requests for production. She also asserts that she agreed on two occasions to sit for depositions scheduled by Jamrogowicz but that Jamrogowicz

4

cancelled both. On April 25, 2012, Jamrogowicz filed a Notice of Removal to District Court. A hearing was never held in Justice Court.

¶11 The Fourth Judicial District Court promptly conducted a status conference and subsequently issued an order allowing discovery through July 27, 2012. It scheduled a contested hearing on the matter for August 31, 2012. The court also entered an order stating the TOP would remain in full force and effect until further order by the court.

¶12 On June 11, 2012, Jamrogowicz served Lear with a notice of deposition setting Lear's deposition for July 6, 2012. Lear did not attend the scheduled deposition.

¶13 On July 5, 2012, Jamrogowicz was charged with criminal stalking. On July 9, 2012, Jamrogowicz moved to dismiss the civil petition for the order of protection with prejudice claiming that Lear abused the discovery process by failing to attend her scheduled deposition. Jamrogowicz appeared on the criminal charge on July 17, 2012, and was ordered to have no contact with Lear. Due to scheduling conflicts, Lear subsequently did not appear at a second deposition scheduled for July 24, 2012.

¶14 On July 27, 2012, Lear moved to dismiss her TOP action without prejudice, stating that having achieved her desired goal of no contact through the criminal proceeding, she no longer needed the civil order of protection. She sought to dismiss the case in a manner that would later permit her to renew the action in the event she needed a future civil order of protection. In response, Jamrogowicz argued that the petition should be dismissed with prejudice as a discovery sanction because Lear failed to attend scheduled depositions.

¶15 On August 15, 2012, the District Court entered a Memorandum and Order of Dismissal granting Lear's motion to dismiss the petition without prejudice. It is from this Order that Jamrogowicz appeals.

## STANDARD OF REVIEW

¶16 The district court has broad discretion in ruling on a M. R. Civ. P. 41 motion to dismiss. The court's decision will be overturned for an abuse of discretion only. *Hauschulz v. Michael Law Firm*, 2005 MT 189, ¶ 14, 328 Mont. 95, 117 P.3d 908.

## DISCUSSION

¶17 *Did the District Court abuse its discretion in granting Lear's motion to dismiss the civil action without prejudice?*

¶18 The District Court analyzed Jamrogowicz's motion to dismiss the TOP with prejudice in the context of M. R. Civ. P. 37, which allows for sanctions for abuse of discovery. Because the court concluded that sanctions were not warranted, it denied Jamrogowicz's request that the TOP be dismissed with prejudice.

¶19 Turning to Lear's motion to dismiss the TOP without prejudice, the District Court analyzed Rule 41 which authorizes voluntary dismissal by a plaintiff or, in this case, a petitioner. The court concluded that voluntary dismissal was "proper as it would be a waste of judicial resources to proceed in two separate courts on the issues in this case." Considering the possibility that the criminal case could be resolved in a manner without the continued protections Lear was seeking, and the possibility that Lear would want the protections to remain in effect, the court concluded Lear "should be free to renew this

action without having to start over in the Justice Court." As a result, the District Court held that dismissal without prejudice was proper.

¶20 As did the District Court, on appeal the parties address the propriety of discovery and sanctions under the rules of civil procedure. We conclude that their focus is misdirected. We turn our analysis instead to the content and purpose of our statutes addressing stalking and orders of protection.

¶21 Section 45-5-220(1)(a)-(b), MCA, defines stalking as purposely or knowingly causing another person substantial emotional distress or reasonable apprehension of bodily injury or death by repeatedly following, harassing, threatening, or intimidating the stalked person, in person, by mail or by electronic communication or device. The statute further provides that upon presentation of credible evidence that a person has violated this statute, the stalked person may obtain a restraining order under Title 40, chapter 15, MCA, against the alleged stalker. Section 45-5-220(4), MCA.

¶22 Section 40-15-101, MCA, makes clear that the purpose of Title 40, chapter 15, MCA, is "to promote the safety and protection of all victims of partner and family member assault, victims of sexual assault, and victims of stalking." Section 40-15-201(1), MCA, allows a petitioner to seek a TOP if the petitioner is "in reasonable apprehension of bodily injury"; is a victim of stalking; and is in "danger of harm if the court does not issue a temporary order of protection immediately."

¶23 Section 40-15-202(1), MCA, states that a hearing must be conducted within 20 days from the date the court issues a TOP. The purpose of the hearing is for the court to determine "whether good cause exists for the temporary order of protection to be

7

continued, amended, or made permanent." The statute also provides that the hearing may be continued at the request of either party for good cause or by the court. In summary, the TOP statutes contemplate a temporary order, followed quickly by a hearing, and continuation of the order as a temporary, amended, or permanent order of protection.

¶24 Notably, the above-quoted statutes make no reference to discovery of any kind, much less the type of protracted discovery evidently allowed in this case. While we recognize that district courts have inherent discretionary power to control discovery in their courts, we have identified no cases, nor have the parties supplied any, indicating that courts have the discretion to allow discovery in matters where the sole issue is the grant or denial of a petition seeking a civil TOP.

¶25 The breadth of discovery the District Court allowed Jamrogowicz, including pursuit of personal information about Lear, was wholly antithetical to the purpose of a TOP. Among other things, Jamrogowicz sought confidential criminal justice information and protected individual privacy information contained in Lear's employment file. Additionally, Jamrogowicz sought to have Lear attend a deposition despite the fact that the TOP precluded Jamrogowicz from being with 1,500 feet of Lear.

¶26 As the statutes taken together establish, the object of a TOP proceeding is the swift and efficient protection of one who is being harassed and intimidated by another. The statutory scheme contemplates that the petition will succeed if the petitioner establishes good cause for the entry of an order, and will fail if she does not. The provision of discovery rights to the respondent in this situation does nothing to protect a victim from harm; rather, it can exacerbate an already untenable situation. For these reasons, we

8

conclude that unless extraordinary circumstances justify it, courts should not compel a petitioner in a stalking matter to be subjected to discovery at the hands of the respondent.

¶27 Finally, we must determine whether the District Court abused its discretion when it dismissed Lear's TOP proceeding without prejudice. We conclude it did not. A TOP is intended to protect victims from the danger of harm at the hands of an assaultive person or stalker. It is not uncommon, especially in cases of partner and family member assault, that the need for a TOP can arise, recede for a time, and then recur again later. Under such circumstances, it makes sense to dismiss a TOP without prejudice so that, if necessary, the victim may resurrect the action quickly and without being required to commence the claim anew. Further, as noted, we do not condone obligatory discovery in TOP matters involving stalking. We are therefore not inclined to agree with Jamrogowicz that Lear should be sanctioned with a dismissal of her TOP proceeding with prejudice for her failure to appear for a deposition. Because Jamrogowicz provides no other authority for her contention that a TOP action may not be dismissed without prejudice, she has failed to establish that the District Court abused its discretion.

## CONCLUSION

¶28 For the foregoing reasons, we affirm the District Court's order granting Lear's motion to dismiss her petition without prejudice.

/S/ PATRICIA COTTER

We Concur:

/S/ BETH BAKER
/S/ MICHAEL E WHEAT
/S/ BRIAN MORRIS
/S/ LAURIE McKINNON