DA 13-0785

## IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2014 MT 153

SEAN BOUSHIE,

       Petitioner and Appellee,

  v.

WILLIAM M. WINDSOR,

       Respondent and Appellant

APPEAL FROM:    District Court of the Fourth Judicial District,
                      In and For the County of Missoula, Cause No. DV-13-969
                      Honorable John W. Larson, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

           William M. Windsor, self-represented, Dallas, Texas

       For Appellee:

           Sean Boushie, self-represented, Stevensville, Montana

                     Submitted on Briefs:  May 14, 2014
                                 Decided:  June 10, 2014

Filed:

                        _____
                                Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1 William M. Windsor (Windsor) appeals from the order of the Montana Fourth Judicial District Court, Missoula County, extending the Temporary Order of Protection (TOP) against Windsor granted to Sean Boushie (Boushie); denying several of Windsor's motions and discovery requests; and enjoining Windsor from filing further proceedings with the court without leave. We affirm, but strike one condition of the District Court's order.

## ISSUES

¶2 Windsor's appeal raises at least six issues with many subparts, most of which are without merit. Rule 12(1)(b) of the Montana Rules of Appellate Procedure provides: "Parties are encouraged to limit the number of issues to 4 or fewer." From the issues Windsor has presented for our review, we have distilled the relevant issues to two:

> *1. Did the District Court abuse its discretion in affirming the Municipal Court TOP; denying Windsor's numerous motions; and remanding to the Municipal Court for further proceedings?*
>
> *2. Did the District Court err by permanently enjoining Windsor from filing any new pleadings without prior District Court approval; and requiring him to post a $50,000 bond if such a proceeding is filed against a judge or court employee?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 The current controversy apparently arose from "cyber-blog" exchanges between Windsor and Boushie. Boushie lives in Montana; Windsor lives in Georgia, South Dakota, or Texas. The two have never met in person. Boushie asserts that his only contact with Windsor was when Boushie sent a cease and desist letter to Windsor's ex-wife regarding

2

Windsor's harassment of Boushie on the website lawlessamerica.com. Windsor ran the website but his ex-wife was the legally registered owner.

¶4    Following the cyber-blog exchanges and cease and desist letter, in 2013, Windsor drove to from Georgia to Montana, where he sought a TOP against Boushie. In fact, the District Court found that he filed four separate petitions for protective orders against Boushie; and filed approximately six police reports about Boushie over nineteen months. All of the petitions for protective orders were denied and no charges have been pressed related to the police reports. Windsor also repeatedly drove past Boushie's residence; showed up at Boushie's workplace at the University of Montana, where he videotaped Boushie's vehicle for approximately ninety minutes; and created a website at SeanBoushie.com, where he posted false and defamatory information about Boushie and his wife. Windsor owns several other similar websites, for instance, AllieOverstreet.com and ClaudineDombrowski.com. Previously, the U.S. District Court for the Northern District of Georgia determined Windsor was a vexatious litigant and permanently enjoined him from filing any complaint or initiating any proceeding in any court or agency of the United States without first obtaining leave of the federal district court in the district in which the action was filed.

¶5    As a result of Windsor's behavior, Boushie requested and was granted a TOP against Windsor, in Municipal Court. The Municipal Court's order barred Windsor from threatening to harm or harming Boushie's wife; harassing or otherwise contacting Boushie's wife or University of Montana staff; coming within 1,500 feet of Boushie's residence, Boushie's wife and the University of Montana; and possessing a certain firearm. It also required

3

Windsor to release SeanBoushie.com to Boushie and to refrain from posting Boushie's name online.

¶6     A hearing on the TOP was scheduled for September 9, 2013. Boushie filed a request to affirm and extend the order of protection in the District Court on September 17, 2013. Windsor moved to vacate the TOP. He also moved for discovery regarding a number of different things, including Boushie's mental health and online activities. He sought a jury trial, and substitution of the judge.

¶7     The District Court denied Windsor's requests and, ultimately, affirmed the Municipal Court's decision regarding the TOP. In its order, the District Court also determined that it was necessary to issue an injunction because of Windsor's "extraordinary abuse of the state judicial system by repeatedly filing frivolous, malicious and vexatious lawsuits . . . ." Accordingly, the court enjoined Windsor from filing any complaint or initiating any proceedings without leave from the district court judge. The court's order also provided that if the lawsuit or proceeding named judges or court employees, Windsor had to tender a $50,000 bond sufficient to satisfy an award of sanctions.

## STANDARD OF REVIEW

¶8     This Court will not overturn a district court's decision to continue, amend, or make permanent an order of protection absent an abuse of discretion. *Lockhead v. Lockhead*, 2013 MT 368, ¶ 12, 373 Mont. 120, 314 P.3d 915. We also review a pre-filing order entered against a vexatious litigant for abuse of discretion. *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1056 (9th Cir. 2007). The question under this standard is not whether we would

4

have reached the same decision as the trial judge, but whether the trial judge acted arbitrarily without conscientious judgment or exceeded the bounds of reason. *Lockhead*, ¶ 12.

## DISCUSSION

¶9    *1. Did the District Court abuse its discretion in affirming the Municipal Court TOP; denying Windsor's numerous motions; and remanding to the Municipal Court for further proceedings?*

¶10    The purpose of Title 40, chapter 15, MCA, is "'to promote the safety and protection of all victims of partner and family member assault, victims of sexual assault, and victims of stalking.'" *Lear v. Jamrogowicz*, 2013 MT 147, ¶ 22, 370 Mont. 320, 303 P.3d 790. Section 40-15-102, MCA, provides criteria for eligibility for an order of protection—victims meeting these may seek relief from their perpetrators under the statute. "As the statutes taken together establish, the object of a TOP proceeding is the swift and efficient protection of one who is being harassed and intimidated by another." *Lear*, ¶ 26. District courts, justices' courts, municipal courts and city courts all have jurisdiction to issue TOPs. Section 40-15-301(1), MCA. If the court finds that the individual petitioning for a TOP is in danger of harm if the court does not act immediately, the court must issue a TOP that grants appropriate relief. Section 40-15-201(2), MCA. Such relief includes:

> (a) prohibiting the respondent from threatening to commit or committing acts of violence against the petitioner and any designated family member;

> (b) prohibiting the respondent from harassing, annoying, disturbing the peace of, telephoning, contacting, or otherwise communicating, directly or indirectly, with the petitioner, any named family member, any other victim of this offense, or a witness to the offense;

.  .  .

5

(d) directing the respondent to stay 1,500 feet or other appropriate distance away from the petitioner, the petitioner's residence, the school or place of employment of the petitioner, or any specified place frequented by the petitioner and by any other designated family or household member;

.   .   .

(j) directing other relief considered necessary to provide for the safety and welfare of the petitioner or other designated family member.

Section 40-15-201(2), MCA. Pursuant to § 40-15-204(5), MCA, a district court has the authority to continue a TOP for "an appropriate time period," make the order permanent, or terminate the order upon the petitioner's request that the order be dismissed. *See Albrecht v. Albrecht*, 2011 MT 316, ¶ 13, 363 Mont. 117, 266 P.3d 1275. A district court must consider the record of the proceedings in assessing whether to grant or deny a respondent's motion to vacate a temporary order of protection. *Lockhead*, ¶ 18.

¶11    Here, following the hearing on the TOP, the District Court determined that Windsor was stalking Boushie and Boushie's wife, and Boushie thereby satisfied the criteria for eligibility for a TOP pursuant to § 40-15-102(2), MCA. The court concluded that the TOP should remain in effect. The court explained:

> Windsor has purposely or knowingly caused Boushie and Boushie's wife substantial emotional distress by repeatedly driving by the Boushie home and showing up at Boushie's work place. Windsor has repeatedly harassed, threatened, and intimidated Boushie and his wife by setting up a website at SeanBoushie.com and posting defamatory and false information about Boushie and his wife. Windsor drove from Georgia to Montana to follow Boushie and his wife around with a video camera. Boushie and his wife are eligible for an order of protection because, despite a cease and desist letter, Windsor continues to follow, threaten, harass, and intimidate both Boushie and his wife causing them both substantial emotional distress. Contrary to Windsor's assertions Windsor's activities are not protected as a member of the press. . . . Windsor has no television show, nor has he made any sort of documentary film. Windsor films snippets of stalking his various victims and

6

posts them to YouTube calling them news. . . . This is stalking behavior and any member of the press engaged in such would be held accountable under the criminal statutes of Montana.

¶12 In light of the record before the District Court, we cannot say the District Court's decision to affirm the TOP was an abuse of discretion. Although Windsor claims the District Court ignored his sworn testimony in affirming the TOP, "[i]t is within the province of the finder of fact to weigh the evidence presented and determine the credibility of witnesses; in the event of conflicting evidence on factual issues, the trier of fact determines which will prevail." *State v. Gladue*, 1999 MT 1, ¶ 40, 293 Mont. 1, 972 P.2d 827. In any case, it is difficult to see how—as Windsor asserts on appeal—Boushie could be stalking Windsor, when it was Windsor who drove across the country to follow Boushie around with a video camera and seek a TOP against Boushie. Considering Windsor's activities, we conclude that the District Court's decision to affirm the TOP was not arbitrary and did not otherwise exceed the bounds of reason.

¶13 Windsor claims the District Court erred by denying his request for a jury trial. The District Court's order explained that "an appeal of a TOP is not the type of case in which a jury trial is authorized." The District Court is correct. Requiring a jury trial at the request of the respondent where a TOP is requested would defeat the purpose of a TOP—to provide swift and efficient protection of the victim.

¶14 Windsor also complains about several of the TOP conditions. Section 40-15-201, MCA, provides a process by which victims of offenses, including stalking, may obtain relief from the perpetrators. All of the conditions Windsor challenges are permitted by the statute. The condition barring Windsor from harming or threatening to harm Boushie's wife is

authorized by § 40-15-201(2)(a), MCA. The condition barring Windsor from harassing or otherwise contacting Boushie's wife or University of Montana staff is authorized by § 40-15-201(2)(b), MCA. The condition preventing Windsor from coming within 1500 feet of Boushie's residence, wife or place of employment is permitted by § 40-15-201(2)(d), MCA. The condition barring Windsor from possessing a certain firearm is within what is contemplated by § 40-15-201(2)(j), MCA. Finally, the condition requiring Windsor to transfer SeanBoushie.com into Boushie's name and to refrain from posting about Boushie on the site is also permissible within § 40-15-201(2)(j), MCA, under the circumstances. The District Court did not abuse its discretion in affirming the TOP.

¶15 Windsor further asserts that the District Court erred by denying him discovery. In denying Windsor's discovery requests, the District Court cited to our decision in *Lear*. There, we explained that broad discovery, including pursuit of personal information about one petitioning for a TOP, is "antithetical to the purpose of a TOP." *Lear*, ¶ 25. The District Court quoted the following language from our decision there:

> The statutory scheme contemplates that the petition will succeed if the petitioner establishes good cause for the entry of an order, and will fail if she does not. The provision of discovery rights to the respondent in this situation does nothing to protect a victim from harm; rather it can exacerbate an already untenable situation. For these reasons, we conclude that unless extraordinary circumstances justify it, courts should not compel a petitioner . . . to be subjected to discovery at the hands of the respondent.

(quoting *Lear*, ¶ 26). Applying this decision, the District Court concluded that the type of discovery Windsor requested was not permissible. We agree, and also note that Windsor has failed to show any extraordinary circumstances justifying the invasive "discovery" that he requests.

8

¶16 Finally, Windsor alleges that the District Court wrongfully denied consideration of his Motion for Substitution of Judge, and "falsely claimed" that this appeal was not a trial de novo. The record reveals, however, that the District Court considered Windsor's Motion for Substitution of Judge and observed that because Windsor's appeal of the TOP did not constitute a trial de novo, no right to substitute a judge under § 3-1-804, MCA, arose. Windsor has not pointed out any legal error in the District Court's reasoning and we decline to address his contention further.

¶17 The District Court did not abuse its discretion in affirming the TOP and remanding to the Municipal Court.

¶18 *2. Did the District Court err by permanently enjoining Windsor from filing any new pleadings without prior District Court approval; and requiring him to post a fifty thousand dollar bond if such a proceeding is filed against a judge or court employee?*

¶19 Montana district courts possess inherent power to sanction willful or reckless conduct, especially when combined with frivolousness, harassment, or improper purpose. *See Motta v. Granite County Comm'rs*, 2013 MT 172, ¶¶ 17, 22, 370 Mont. 469, 304 P.3d 720. We have observed that although Article II, § 16, of the Montana Constitution guarantees every person access to the courts of the state, that right is not an absolute right and may be reasonably restricted in light of a "legitimate state interest." *Motta*, ¶ 18. To review pre-filing orders entered against vexatious litigants, we adopted the criteria used by the Ninth Circuit Court of Appeals: Whether the litigant was given notice and a chance to be heard before the order was entered; whether the trial court has compiled an adequate record for review; whether the trial court has made substantive findings about the frivolous or harassing nature of the plaintiff's litigation; and whether the vexatious litigant order is narrowly

9

tailored to closely fit the specific vice encountered. *Motta*, ¶ 20 (citing *Molski*, 500 F.3d at 1057). We further endorsed the Ninth Circuit's five-factor test to examine whether a pre-filing order is justified:

> (1) the litigant's history of litigation and, in particular, whether it has entailed vexatious, harassing, or duplicative lawsuits;
>
> (2) the litigant's motive in pursuing the litigation; e.g., whether the litigant has an objective good faith expectation of prevailing;
>
> (3) whether the litigant is represented by counsel;
>
> (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and
>
> (5) whether other sanctions would be adequate to protect the courts and other parties.

*Motta*, ¶ 20 (citing *Molski*, 500 F.3d at 1058). We affirmed the District Court's entry of a pre-filing order to address problems with a vexatious litigant where the court's order was supported by detailed findings that addressed the Ninth Circuit factors. *Motta*, ¶¶ 22-23.

¶20 Here, following a hearing, and aided by a record that Windsor himself points out is extensive, the District Court concluded Windsor deserved to be sanctioned as a vexatious litigant. In reaching that determination, the court noted that "Windsor has a history of filing frivolous actions in courts all over the country and engaging in precisely the type of stalking behavior alleged by Boushie in his original Sworn Petition." The court recognized that Windsor had previously been deemed a vexatious litigant by the U.S. District Court for the Northern District of Georgia and that Windsor ran several websites aimed at harassing and threatening particular individuals, including Boushie. The court further discussed the burden to clerical and judicial resources caused by Windsor's "voluminous frivolous filings"—the

10

extent and nature of which are easily confirmed from review of the record. Based on these determinations, the court concluded it was necessary to enjoin Windsor from initiating any further proceedings without seeking leave of the court; and to require Windsor to post a $50,000 bond sufficient to satisfy an award of sanctions if the proceeding named judges or court employees, since such an action would be presumably frivolous.

¶21 We conclude that the District Court adequately weighed the *Motta* factors in sanctioning Windsor as a vexatious litigant through imposing a pre-filing order. The court did not abuse its discretion in requiring Windsor to seek court approval before filing future lawsuits or administrative proceedings. Indeed, such action was tailored to address Windsor's demonstrated proclivity for filing voluminous lawsuits of questionable merit. We are not persuaded, however, that the condition of the court's order requiring Windsor to post a $50,000 bond sufficient to cover sanctions in the event that Windsor files an action or proceeding against a judge or court employee is sufficiently closely tailored to fit the specific vice encountered. *See Motta*, ¶ 20. The District Court's order made no reference to any instance in which Windsor has brought a lawsuit or other action against any court employee or judge. A blanket sanction for filing lawsuits or other proceedings aimed at judges and court employees without any evidence that Windsor has engaged in such conduct in the past is an abuse of discretion. We conclude that the condition requiring Windsor to post a $50,000 bond if an action he files names judges or court employees must be stricken from the court's order. Because we uphold the court's sanction preventing Windsor from filing actions without prior court approval, we will leave to the approving court's discretion the determination of whether a bond is required and, if so, in what amount.

11

## CONCLUSION

¶22    The District Court's order is affirmed, as amended by this Opinion.


                                              /S/ MICHAEL E WHEAT

We Concur:

/S/ BETH BAKER
/S/ LAURIE McKINNON
/S/ PATRICIA COTTER
/S/ JIM RICE