FILED

07/06/2021

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 20-0519

DA 20-0519

IN THE SUPREME COURT OF THE STATE OF MONTANA

2021 MT 168N

NENA S. KRUGER,

       Petitioner and Appellant,

       v.

DALE R. KRUGER,

       Respondent and Appellee.

| | |
|---|---|
| APPEAL FROM: | District Court of the First Judicial District, In and For the County of Lewis and Clark, Cause No. DDR 2018-199 Honorable James P. Reynolds, Presiding Judge |

COUNSEL OF RECORD:

       For Appellant:

              Tara A. Harris, Harris Law Office PLLC, Helena, Montana

       For Appellee:

              Brent Flowers, Greg Beebe, Beebe & Flowers Law Firm, Helena, Montana

                     Submitted on Briefs: June 2, 2021

                               Decided: July 6, 2021

Filed:

                          _____
                                    Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Nena Kruger appeals a First Judicial District Court order vacating a 2018 temporary order of protection ("TOP") against her ex-husband, Dale Kruger. We affirm.

¶3 Dale and Nena were married in Washington in 2005. By 2008 they had legally separated, and Dale purchased and moved into a house outside of Helena. The two attempted to reconcile in 2011, with Nena moving to Montana to live with Dale. The attempted reconciliation failed, however, and Dale asked for a divorce in Washington in 2017. Dale and Nena continued to live together in Montana until March 2018, when Dale moved to Deer Lodge. Nena remained in the Helena residence. On April 6, 2018, Nena filed a petition for a TOP ("First Petition") with the District Court, naming Dale as respondent; the court found her allegations vague and denied the petition. The parties' divorce was finalized on April 16, 2018. Nena filed a second TOP petition ("Second Petition") in Justice Court on April 23. The Justice Court denied it, stating that Nena needed to file the petition with the District Court. On April 24, Nena filed a third TOP petition ("Third Petition") with the District Court. The District Court granted the Third Petition and entered a TOP prohibiting Dale from contacting Nena or the parties' minor daughter who lived with Nena.

2

¶4 The court set a hearing date of May 10, 2018, to consider whether to make the TOP permanent. The hearing was delayed several times, however, and eventually trifurcated over a period of about half a year. Witnesses included Robert Smith, a tenant living on the Kruger's property; Karl Kruger, the parties' adult son; and both Nena and Dale. Disposition of the matter was delayed until September 2020, when the District Court entered an Order vacating the TOP, concluding that it was not necessary to enter a permanent order of protection. Nena argues that the District Court erred by improperly relying on, misapprehending, and giving undue weight to various pieces of evidence and testimony elicited at the hearing.

¶5 "This Court will not overturn a district court's decision to continue, amend, or make permanent an order of protection absent an abuse of discretion." *Boushie v. Windsor*, 2014 MT 153, ¶ 8, 375 Mont. 301, 328 P.3d 631 (citation omitted). Under the abuse of discretion standard, this Court does not consider whether it would have reached the same decision as the trial judge, but only whether the trial judge "acted arbitrarily without conscientious judgment or exceeded the bounds of reason." *Boushie*, ¶ 8 (citation omitted). This Court reviews findings of fact to determine if they are clearly erroneous. *In re Marriage of Olson*, 2008 MT 232, ¶ 20, 344 Mont. 385, 194 P.3d 619 (citation omitted). "A finding is clearly erroneous if it is not supported by substantial evidence, the district court misapprehended the effect of the evidence, or our review of the record convinces us the district court made a mistake." *Marriage of Olson*, ¶ 20 (citation omitted). This Court does not substitute its own judgment for that of the district court regarding a witness's credibility or the weight to be given his or her testimony.

*In re Marriage of Tummarello*, 2012 MT 18, ¶ 34, 363 Mont. 387, 270 P.3d 28 (citation omitted).

¶6     The purpose of Montana's laws authorizing orders of protection is "to promote the safety and protection of all victims of partner and family member assault, victims of sexual assault, and victims of stalking." *Lear v. Jamrogowicz*, 2013 MT 147, ¶ 22, 370 Mont. 320, 303 P.3d 790 (quoting § 40-15-101, MCA; internal quotation marks omitted). Section 40-15-201, MCA, provides that a court shall issue a TOP upon finding "the petitioner is in reasonable apprehension of bodily injury or is a victim of one of the offenses listed in 40-15-102, has a relationship to the respondent if required by 40-15-102, and is in danger of harm if the court does not issue a [TOP] immediately." As its name suggests, however, a TOP is only temporary—a court must conduct a hearing on the temporary order to "determine whether good cause exists for the [TOP] to be continued, amended, or made permanent." Section 40-15-202(1), MCA. In considering whether to make a TOP permanent, a court must determine whether, "to avoid further injury or harm, the petitioner needs permanent protection" by analyzing "the respondent's history of violence, the severity of the offense at issue, and the evidence presented at the hearing." Section 40-15-204(1), MCA.

¶7     At the hearing, both parties elicited witness testimony on a wide range of allegations and grievances they had against one another. Nena supported her allegations with a few pictures, which were not conclusive. The District Court thus based its decision to vacate the TOP largely on witness credibility and on the weight it determined to afford the witnesses' testimony.

4

¶8    Nena alleges the District Court made three main errors in its Order vacating the TOP: improperly relying upon the Justice Court's denial of her Second Petition; improperly considering testimony that Dale threatened Nena; and generally finding Dale's testimony credible despite the weight of the evidence.

¶9    Regarding the Justice Court's denial of Nena's Second Petition, the District Court noted in its fourth finding of fact: "The Justice Court denied Nena's [Second Petition] on April 23, 2018."  In its conclusions of law, the court implicitly referenced the Second Petition again: "Nena filed three separate petitions for order of protection, two of which were denied.  The [First Petition] contained none of the specific allegations contained in Nena's later petitions."  Nena claims these findings and conclusions demonstrate the District Court either misapprehended the effect of, or was mistaken regarding, the Justice Court's denial—which was procedural in nature, rather than on the merits.  Finding of fact number four, however, is an objectively correct statement.  The Justice Court did indeed deny Nena's Second Petition on April 23 with a notation, "Denied—Must file in District Court," on the document's caption.  Reading the District Court's conclusion of law in context indicates that the court focused not on the fact the Second Petition was denied, but on the fact that it contained new allegations.  The District Court then turned its attention to the hearing testimony and the allegations of the Third Petition; it did not reference the Second Petition again. The District Court did not rely on the Second Petition's denial in making its conclusion, and the few references the District Court did make to the Second Petition were accurate.

¶10 Nena next contends that the District Court improperly considered the fact that Dale had not acted on the threats he allegedly made toward Nena. The court noted that "Dale has made threats towards Nena, such as running her off the road, knocking her down a flight of stairs, or dropping a rock on her car from an overpass." It added, however, that Dale "did not make these threats directly to Nena, but to their tenant Smith. None of the threats have been followed through on." At the hearing, Nena called Smith to testify. Smith testified that Dale did indeed make these threats but only while otherwise venting about their deteriorating relationship, and at no point did Smith consider them to be serious. The District Court contrasted this testimony with testimony alleging Nena encouraged Smith and Karl to make false statements to law enforcement, that Dale was never charged with any crimes, and that Nena continued to reside with Dale after Dale allegedly made statements to her in which he admitted to criminal activity. It ultimately concluded that Nena was not fearful of Dale. Reviewing the hearing transcript, we find support for the District Court's interpretation of the witnesses' testimony. Nena has not demonstrated clear error in its findings. *Marriage of Tummarello*, ¶ 34.

¶11 Finally, Nena contends that the District Court erred in finding credible Dale's various denials of the accusations against him because Dale admitted to having previously lied to her. Nena points to the fact that during the hearing Dale admitted that he had lied to her in April 2018, in order to "keep things spinning" and generally cause her stress. The lie—concerning how Dale initially learned of the First Petition—was unrelated to the accusations Nena made in support of the TOP, and Dale admitted to the lie while under oath. There is substantial evidence in the record from which the District Court could find

Dale generally credible despite this lie. On the record as a whole, the court did not abuse its discretion regarding how much weight Dale's testimony should be afforded. The District Court's findings in that regard are not clearly erroneous. *Marriage of Olson*, ¶ 20; *Marriage of Tummarello*, ¶ 34.

¶12 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review. Although Nena points to evidence that could have led the court to a different result, the District Court's findings support its conclusion that Nena did not need permanent or extended protection "to avoid further injury or harm." Section 40-15-204(1), MCA. We conclude that the court did not abuse its discretion by vacating the TOP and by declining to issue an order extending it for an additional period of time or making it permanent. The District Court's Order vacating the TOP is affirmed.

/S/ BETH BAKER


We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON
/S/ DIRK M. SANDEFUR
/S/ JIM RICE