FILED

08/27/2024

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 23-0160

DA 23-0160

IN THE SUPREME COURT OF THE STATE OF MONTANA

2024 MT 195N

ERIKA DAWN PETERSON-WEILACHER,

      Petitioner and Appellee,

   v.

SCOTT MATTHEW WEILACHER,

      Respondent and Appellant.

APPEAL FROM:   District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DR-23-033
Honorable Danni Coffman, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Brian M. Lebsock, Post & Lebsock, PLLC, Missoula, Montana

            R. Shane Johnson, R. Shane Johnson, PLLC, Salt Lake City, Utah

      For Appellee:

            Caleb Simpson, Gersh, Simpson & Joos, PLLP, Whitefish, Montana

Submitted on Briefs:  November 15, 2023

Decided:  August 27, 2024

Filed:

                         _____
                               Clerk

Justice Dirk Sandefur delivered the Opinion of the Court.

¶1      Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2      Scott Matthew Weilacher (Scott) appeals the Montana Eleventh Judicial District Court, Flathead County, February 2023 decisions denying his motion to continue hearing on the court's January 2023 temporary order of protection and continuing the protection order for five years.

¶3      On January 18, 2023, Erika Dawn Petersen-Weilacher (Erika) petitioned the District Court pursuant to § 40-15-201, MCA, for a temporary order of protection based on assertions that during a December 28, 2022, incident at the Columbia Falls residence where she and Scott lived,[1] Scott "shoved [her] down the [outside] stairs and onto the cement" and then "violently shook" and hit her, breaking her nose. Erika further alleged that Scott "threatened to shoot" her and her adult daughter who was present at the time. Though she called 9-1-1 to report the incident, when law enforcement officers arrived, Scott was in hiding and Erika "too fearful" to disclose his whereabouts. The petition further alleged that Scott fled to Utah two days later and texted Erika that he would "deal with" her upon

_____

[1] The record indicates the residence is a fifth-wheel trailer parked on approximately 35 acres in Flathead County.

his return.  Finally, the petition alleged prior incidents of violence—once on December 27, 2022, when Scott put Erika "in a chokehold until [she] tapped out" over a domestic "disagreement," and another earlier that year when Scott "attacked" her, "pulled [her] hair violently," and "strangled" her after coming home drunk.[2]

¶4      Pursuant to §§ 40-15-201(4) and -202(1), MCA, the District Court issued an ex parte immediate temporary Order of Protection on January 19, 2023, setting hearing on the matter for February 8, 2023.  At 8:05 a.m. the morning of February 8th, Scott filed an "Emergency" pro se motion to continue the hearing on the asserted grounds that despite his "best efforts" he had experienced difficulty retaining Montana counsel from where he then resided in Utah and needed "at least an additional two weeks" to secure admittance for his "preferred Utah attorney."  Scott certified that he served Erika "by depositing [the motion] into the US mail" that day.  Approximately an hour and a half later, the District Court issued a written order denying a continuance on the grounds that the "last minute" motion provided insufficient time in advance of the scheduled 1:30 p.m. hearing to notify Erika of any changes.

¶5      Both Erika and Scott appeared pro se at hearing.  Scott immediately renewed his argument for a continuance on the grounds that he was unable to obtain local counsel or access "evidence" to refute Erika's petition allegations due to her "lock[ing] [him] out" of his "accounts."  Noting that he was served with the temporary protection order on

---

[2] The petition also noted that a "strangulation case" was then-pending "with the Flathead County Sherrif's Department."

3

January 20th, the court reiterated its decision to deny Scott's same-day motion. Afterward, Erika testified in conformance with her petition allegations, photographs, and text message records, that Scott violently assaulted her on December 27-28, 2022, and after fleeing to Utah, threatened to "deal with [her] when he [got] home." Next, Erika's daughter testified regarding the events she witnessed on December 28th and that Scott also violently attacked her while she tried to defend her mother. When given the opportunity to challenge either Erika or her daughter's testimony, Scott declined.

¶6    He then told a different version of the events of December 27-28, 2022. Scott testified that on December 27th, Erika "attacked" him over a text message he had received from his ex-wife and when she "started swinging," he "had to . . . hold her from behind." He further testified that on the evening of December 28th, Erika "slipped" while attacking him on the steps and that something, possibly Erika's "own hands," "accident[ally]" made contact with her nose. He also testified that Erika's daughter retrieved a handgun belonging to him from the center console of her vehicle and threatened to shoot him. Scott denied choking or hitting anyone. The court asked what evidence and documents he would present "if [he] had them." Scott answered:

> Just all the timeline, the format, everything else, all the Thanksgiving conversation, and all the conversation where she's threatened to take her life and . . . the only reason why . . . I had three handguns in my truck . . . [is] because she keeps threatening to shoot herself or take her own life or even—I don't know. And I have a lot of that documented and it goes way, way back. . . . I had the Third District Court of Utah . . . provide me with a protective order . . . and they actually removed her from my . . . property.

And [the police] actually filed a domestic violence charge against her at that time as well.[3]

When the court asked if he had "anything else," Scott answered, "[o]ther than that" and "the fact that she was threatening violence," "no."

¶7 The District Court then announced from the bench that it was continuing the order of protection for a term of five years. The court found and concluded that under §§ 45-5-201, -206, and -215, MCA, Erika was "a victim of assault," "partner family member assault," and "strangulation of partner family member," and "in reasonable apprehension of bodily injury by her husband." The court further noted for the record that it found Erika and her daughter's testimony credible, and Scott's testimony not credible. The same day, the protection order issued, which *inter alia* required that Scott:

(1) "give [Erika] possession or use of" the current residence in Columbia Falls, access to their "joint" bank account "to pay [u]tility [b]ills," items in the Whitefish storage unit, and keys to the excavator;[4]

(2) stay at least 1500 feet from Erika and the Columbia Falls residence; and

(3) not "take, hide, sell, damage, or dispose of" "[p]roperty belonging to" him, Erika, or both of them.

---

[3] Later, Erika testified that the Utah protection order "was dismissed[] and expunged from [her] record because there wasn't any evidence that [she] assaulted him" and that the parties had later "stipulated" to a "mutual restraining order" during their since-dismissed "divorce proceedings." Her protection order petition similarly stated that a "criminal charge of misdemeanor assault was filed against [her] in Salt Lake," but was later "dismissed as there was no evidence that [she] was the perpetrator."

[4] Erika listed these items of property in her January 2023 protection order petition, and the TPO incorporated the list verbatim. She testified at hearing that Scott changed the locks on the storage unit and parked the excavator across the road blocking access to the residence.

The District Court did not issue written findings of fact or conclusions of law. Scott timely appeals.

¶8 First, Scott asserts that the District Court erroneously denied his same-day motion for continuance. "We will not overturn a court's decision to deny a motion for a continuance absent a showing of both an abuse of discretion and prejudice to the complaining party." *McCormack v. Andres*, 2008 MT 182, ¶ 23, 343 Mont. 424, 185 P.3d 973; *State v. Scott*, 257 Mont. 454, 463-64, 850 P.2d 286, 292 (1993). An abuse of discretion occurs if a lower court exercises lawful discretion based on a clearly erroneous finding of material fact, an erroneous conclusion or application of law, or otherwise acts arbitrarily, without conscientious judgment or in excess of the bounds of reason, resulting in substantial injustice. *In re Marriage of Bessette*, 2019 MT 35, ¶ 13, 394 Mont. 262, 434 P.3d 894; *Larson v. State*, 2019 MT 28, ¶ 16, 394 Mont. 167, 434 P.3d 241.

¶9 Scott makes much ado on appeal about his purported inability to muster "exculpatory evidence" in time for the scheduled show cause hearing, but he did not seek a continuance based on his inability to access evidence—Scott's written motion asserted only that he had been unable to retain local counsel and needed additional time to secure his "preferred Utah attorney." *See* § 25-4-501, MCA ("[a] motion to postpone a trial on grounds of the absence of evidence shall only be made upon affidavit showing the materiality of the evidence expected to be obtained and that due diligence has been used to procure it"); *compare* § 25-4-503, MCA ("[u]pon good cause shown and in furtherance of justice, the court may, in its discretion, postpone a trial or proceeding upon other grounds

6

than the absence of evidence under such conditions as the court may direct"), *and* § 40-15-202(1), MCA ("hearing date" on temporary order of protection "may be continued at the request of either party for good cause or by the court"). The object of a temporary order of protection proceeding "is the swift and efficient protection of one who is being harassed and intimidated by another." *Lear v. Jamrogowicz*, 2013 MT 147, ¶¶ 22-26, 370 Mont. 320, 303 P.3d 790 ("TOP statutes contemplate a temporary order, *followed quickly by a hearing*, and continuation of the order as a temporary, amended, or permanent order of protection"—emphasis added); § 40-15-101, MCA. The District Court was within its discretion to deny Scott's 8 a.m. day-of motion to continue the 1:30 p.m. hearing, scheduled 20 days prior, for "at least an additional two weeks" in order for Scott to obtain his "preferred" representation and without notice to Erika, a pro se petitioner, sufficient to afford her a meaningful opportunity to address and/or oppose the motion.[5] *See McCormack*, ¶ 42 ("a motion must provide both notice to a party interested in opposing the motion and an opportunity to oppose [it] intelligently"—citing *Luppold v. Lewis*, 172 Mont. 280, 294-95, 563 P.2d 538, 546 (1977)). *See also Fields v. Wells*, 239 Mont. 392, 394-95, 780 P.2d 1141, 1143 (1989) (plaintiffs failed to meet requirements of § 25-4-503,

---

[5] On appeal, Scott explains in great detail the lengths to which he went to obtain Montana counsel in time for the February 8th hearing. We note, however, that Scott states he "contacted out-of-state counsel on January 22, 2023, requesting assistance" two days after service of the TPO, and that his out-of-state counsel, R. Shane Johnson (later admitted pro hac vice on appeal by this Court in April 2023), "research[ed]" and "contact[ed]" various Montana attorneys on Scott's behalf in an attempt to retain local counsel in advance of the scheduled hearing. So while not represented by his "preferred Utah attorney" at the protection order hearing, Scott nonetheless had the benefit of counsel's assistance in the weeks prior.

7

MCA, by "merely stat[ing] that they were attempting to locate" counsel and "provid[ing] a list of attorneys they supposedly contacted").

¶10 Moreover, upon Scott's renewed argument at the start of hearing, the District Court assured him that he would "have the opportunity to ask questions" and "present any evidence that [he] would like to present" regardless of whether it was "organized." In turn, Scott declined to cross-examine Erika or her daughter, asserted only that their testimony was generally untruthful save "the insignificant details," and offered his account of events underlying the protection order petition allegations. The essential elements of due process are notice and the opportunity to be heard. *In re Kesler*, 2018 MT 231, ¶ 29, 392 Mont. 540, 427 P.3d 77; *Bardsley v. Pluger*, 2015 MT 301, ¶¶ 15-17, 381 Mont. 284, 358 P.3d 907 (§ 40-15-202(1), MCA, show cause hearing requirement "ensure[s] that a respondent in a civil order of protection action is afforded an opportunity to be heard"). Here, Scott was afforded both the statutorily required 20-day advance notice of the scheduled show cause hearing and an opportunity to appear and present his case against the order of protection. Further, Scott described the purportedly inaccessible documentary evidence he "would have" presented "if [he] had it" as records of correspondence wherein Erika threatened self-harm and a prior out-of-state temporary no-contact/protection order issued in his favor. But in rebuttal, Erika testified that the referenced protection order had been "dismissed" for lack of "any evidence that [she] assaulted him." The evidence Scott described did not directly contradict Erika or her daughter's testimony regarding the events of December 27-28, 2022, nor was it evidence that Erika "attacked" him at that time. To

any extent that it may have supported an inference that Erika was also prone to aggression or violence, it was within the province of the District Court as fact-finder to assess the relative credibility and veracity of the parties' conflicting accounts. *See Boushie v. Windsor*, 2014 MT 153, ¶ 12, 375 Mont. 301, 328 P.3d 631; *In re Marriage of Bliss*, 2016 MT 51, ¶ 17, 382 Mont. 370, 367 P.3d 395. Accordingly, Scott has failed to demonstrate that the District Court abused its discretion in denying his same-day motion for continuance, or that he suffered prejudice by having to respond to Erika's pro se petition allegations without the assistance of preferred out-of-state counsel or the described documentary evidence in-hand.[6]

¶11 Next, Scott asserts that the District Court erred in continuing the temporary order of protection without making any predicate findings of fact under § 40-15-201(1), MCA, to support its conclusion that Erika was a "victim" of assault, partner assault, and partner strangulation. He further asserts that the court erroneously restricted and enjoined his access to and possession of the Columbia Falls residence, and various personal property assets located there and elsewhere, based on its erroneous conclusion that he and Erika are married, and without supporting findings of fact under §§ 40-15-201(2) and -204(3), MCA, that the subject property restrictions/enjoinder are "essential" for Erika's protection. "We refuse to overturn [a] district court's decision to continue, amend, or make permanent an

---

[6] We are also unconvinced by Scott's argument that he was somehow prejudiced by not being sworn in at hearing—an apparent oversight—and presume that his testimony there was truthful. *See* § 26-1-302, MCA ("[a] witness is presumed to speak the truth").

order of protection absent an abuse of the court's discretion." *Edelen v. Bonamarte*, 2007 MT 138, ¶ 6, 337 Mont. 407, 162 P.3d 847.

¶12 Erika asserted in her protection order petition that she and Scott had "been together since August 2016," "married in November 2017," and were currently "married" and "liv[ing] together" at the Columbia Falls residence. She also stated that she previously "filed for divorce in Utah," but that Scott "convinced [her] to dismiss the case and continue with the marriage." Erika testified at hearing that she and Scott had been married since November 2017, and when asked by the court if they were "currently in divorce proceedings," answered that they were not, but were "moving [in] that direction." Scott repeatedly asserts, for the first time on appeal, that he and Erika are not married. But he did not object to or contest the District Court's determination at hearing that Erika was a victim of "*partner* family member" assault and strangulation pursuant to §§ 45-5-206 and -215, MCA, and "in reasonable apprehension of bodily injury by *her husband*." In fact, in describing the events of December 27-28, 2022, Scott told the court that he and Erika had intimate "marital relations" during that timeframe. Consistent with its statements at hearing, it is apparent the court found that Scott was Erika's husband, and therefore a "partner," as defined by § 45-5-206(2)(b), MCA ("partners" are "spouses, former spouses," or "persons who have been or are currently in a dating or ongoing intimate relationship"), for purposes of its conclusions of law under § 40-15-201(1), MCA.[7] This finding is supported by uncontroverted evidence and is not clearly erroneous.

---

[7] *See In re D.L.B.*, 2017 MT 106, ¶¶ 13-14, 387 Mont. 232, 394 P.3d 169 ("otherwise facially insufficient findings of fact may be minimally sufficient if, within the scope of the express findings

¶13    However, Scott correctly notes that the District Court failed to render any supporting findings regarding the specific assaultive conduct underlying its conclusion that Erika was a "victim" of the enumerated assault and strangulation offenses. M. R. Civ. P. 52(a)(1) requires that "[i]n an action tried on the facts without a jury," a court "must find the facts specially and state its conclusions of law separately," either "on the record after the close of the evidence or . . . in an opinion or a memorandum of decision filed by the court." *See Snavely v. St. John*, 2006 MT 175, ¶¶ 9-11, 333 Mont. 16, 140 P.3d 492 (Rule 52(a) requires a court to "set[] forth [its] reasoning . . . in a manner sufficient to allow informed appellate review"); *accord Edelen*, ¶¶ 10-13. At hearing, Scott disputed Erika's version of events and denied choking or hitting her. Without specific findings of fact regarding Scott's conduct, we are unable to determine whether the District Court correctly concluded that Erika was a victim of assault and strangulation, and thus ultimately whether the court abused its discretion, as Scott asserts, in continuing the temporary order of protection.

¶14    Finally, Scott asserts that the District Court erroneously imposed the subject property use and access restrictions "assuming" the parties were married and without supporting findings of fact. Section 40-15-201, MCA, authorizes a court, upon finding a petitioner is "in reasonable apprehension of bodily injury" or "a victim" of any offenses listed in § 40-15-102, MCA,[8] and "is in danger of harm if the court does not act

made, more specific findings of fact 'necessary to the determination' can be clearly inferred from other express findings or the evidentiary record"—citation omitted).

[8] Including assault, partner or family member assault, and/or strangulation of partner or family member, as defined by §§ 45-5-201, -206, and -215, MCA, respectively.

11

immediately," to issue a temporary order of protection granting the petitioner "appropriate relief." Sections 40-15-201(1), (2), (4), -102(1)(a), (b)(i), (iv), and (ix), MCA. "Appropriate relief" may include "directing the transfer of possession and use of the residence . . . and other essential personal property, regardless of ownership"; "prohibiting the respondent from transferring, encumbering, concealing, or otherwise disposing of any property except in the usual course of business or for the necessities of life"; and "other relief considered necessary to provide for the safety and welfare of the petitioner." Section 40-15-201(2)(g), (h), and (j), MCA. Section 40-15-204(5), MCA, further authorizes the court to continue a temporary order of protection for "an appropriate time period," make the order permanent, or terminate it upon petitioner request. *Boushie*, ¶ 10.

¶15 While the court's determination that the parties were married and therefore "partners" for purposes of § 40-15-201(1), MCA, was supported by uncontroverted evidence, and ownership of the subject property was ultimately immaterial to the property/asset use and access restrictions imposed, the record indicates that, based on Erika's hearing testimony that she and Scott were "moving" toward divorce, the District Court at least *anticipated* impending divorce proceedings, as apparent by its comments that "if the two of you are going to be getting a divorce, you need to not dispose of property and money," and, upon continuing the TPO for five years, that if "in the course of your divorce proceedings you decided to do something different, you can do that, if you're in agreement." Scott argues on appeal that "[n]o such divorce proceedings were or are pending." Without express findings of fact regarding whether the subject real and personal

12

property was "essential" or the property restrictions "necessary" to protect Erika under its order, as distinct from any possible future adjudication of the parties' marital status and property claims beyond the scope of the protection proceedings, we also cannot say whether the District Court abused its discretion in imposing the subject property restrictions/enjoinder upon Scott for the five-year duration of the protection order.

¶16 We hold that the District Court did not abuse its discretion in denying Scott's same-day motion to continue hearing on the temporary order of protection. However, we remand to the District Court for entry of explanatory findings of fact regarding the court's conclusion that Erika was "a victim" of the assaultive offenses described in §§ 45-5-201, -206, and -215, MCA, and for entry of findings of facts as to whether the court-ordered property restrictions/enjoinder were essential and necessary for Erika's protection. The court's February 8, 2023, Order of Protection shall remain in full force and effect during the pendency of remand proceedings.

¶17 We decide this case by memorandum opinion pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules. Affirmed in part and remanded in part for entry of findings of fact and conclusions of law in accordance with M. R. Civ. P. 52(a) and this opinion.

/S/ DIRK M. SANDEFUR

We concur:

/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ INGRID GUSTAFSON
/S/ JIM RICE

13